<hr/>

CASE 94—INJUNCTION—FEB. 21.

# Gibson v. Wood.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

MUNICIPALITIES—CITIES OF THE FIRST CLASS—SINKING FUND COMMISSIONERS—ELIGIBILITY.—The annexation of the suburb Enterprise to the City of Louisville in August, 1896, rendered appellee, who had resided in said suburb more than three years, eligible to the office of Sinking Fund Commissioner in said city in November, 1896, although under the statute such commissioner must, to be eligible, have resided in the city "three years preceding his election."

HELM & BRUCE FOR THE APPELLANT.

The appellee, Wood, was not eligible because the statute defining eligibility prescribes three years' residence in the city as one of the conditions of eligibility. City charter, sec. 261.

HUMPHREY & DAVIE AND JOHN W. BARR, JR., FOR APPELLEE.

1. Wood was eligible to the office of Sinking Fund Commissioner. The annexation of Enterprise brought its citizens into the city with the same rights as if it had always been a portion of the city. First Constitution of Kentucky, art. 1, secs. 4, 5, 10, 11; art. 2, sec. 2; art 3, sec. 1; present Constitution of Kentucky, secs. 114, 116, 234; Bill of Rights, secs. 3, 6; Act to Amend Charter of Louisville (1869); Charter of Cities of First Class,

Gibson v. Wood.

secs. 6, 9, 224, 258, 261; State v. Oakes, 39 Am. St. Rep., ——;
Spelling on Extraordinary Relief, secs. 620, 1778; Sutherland
on Statutory Construction, sec. 309; Endlich on Interpretation
of Statutes, secs. 357, 527; Black on Interpretation of Laws, p.
31; McCrary on Elections, secs. 13, 14, 59; Sink v. Rees, 2 Am.
Rep., 397; Renner v. Bennett, 21 Ohio St. Rep.; 431.

CHIEF JUSTICE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The opinion of the chancellor so fully covers the law and
the facts of this case that we adopt it as our opinion.   It
is as follows:

"In October, 1893, the plaintiff, Charles H. Gibson, was
elected commissioner of the sinking fund of the city of
Louisville for a term of three years, and until his successor
shall have qualified.   The plaintiff entered upon the duties
of his office, and became president of said board.   On Octo-
ber 15, 1896, the general council of the city of Louisville,
duly assembled in joint session for the purpose, elected the
defendant, George T. Wood, to succeed the plaintiff,
Charles H. Gibson; casting eight votes for the plaintiff,
three votes for J. M. McKnight, and twenty-five votes for
the defendant.   A proper certificate of election has been
delivered to the defendant.   He has given bond, and taken
the oath of office, as required by law, and his bond has been
approved by the general council.

This   action   was   begun   November   9,   1896,   for
the   purpose   of   enjoining   and   restraining   the   de-
fendant   from   taking   or   holding   the   office   of   com-
missioner of the sinking fund of the city of Louisville, or
from in any manner interfering with the plaintiff in the dis-
charge of his duties as such commissioner.   A temporary
restraining   order   was   entered   in   accordance   with   the
prayer of the petition.   The case is now before the court
upon an application for a preliminary injunction, as pray-
ed for in the petition.

"It is claimed that defendant, Wood, was not at the time of his election, and is not now eligible to hold the office of sinking fund commissioner of the city of Louisville by reason of his residence only. Section 261 of the city charter provides:

'No person shall be eligible to any office who is not at the time of his election a qualified voter of the city, and who has not resided therein three years preceding his election.' The evidence shows that the defendant, Wood, was born in the city of Louisville on December 26, 1855; that from his birth until the 10th day of July, 1893, he resided at No. 946 Third street, in the city of Louisville; that on July 10, 1893, he moved, with his family, to his present residence, on the northwest corner of East Broadway and Longest avenue, then in the town of Enterprise, a suburb of the city of Louisville, and about two squares east of the city boundary as fixed in 1869; and that he has continuously lived in his new home since July 10, 1893.

In August, 1896, the town of Enterprise was annexed to, and became a part of, the city of Louisville, and is now designated as the Thirty-fifth precinct of the First ward of said city. At the election held on November 3, 1896, the defendant, Wood, voted at said precinct.

It appears that, while defendant had resided in his present home more than three years before his election in October, 1896, the territory upon which his residence is located had been a constituent part of Louisville only about two months at the time of his election.

"In considering the eligibility of the defendant, therefore, are we to give him the benefit of his period of residence from the time he moved to his new home, in August, 1893, when it was located in the town of Enterprise, or shall he

be restricted to the time that his home has been incorporated in the present limits of the city of Louisville? The question may be simply put as follows: When the territory occupied by the defendant's residence was incorporated into the city of Louisville, did he then acquire all the rights of a resident of the city of Louisville, and is he entitled to consider the period of his residence in Enterprise in determining the eligibility to this office?

The industry of counsel has failed to produce any authority directly in point. Many instances, more or less analogous, have been used in illustrations. The organization of the State of Kentucky is cited as bearing upon this question. Prior to February, 1791, the territory composing the present State of Kentucky was known as the 'District of Kentucky.'

"The first Constitution, adopted in April, 1792, provided that representatives should be chosen on the first Tuesday in May following, and that no person should be eligible to that office who had not been a resident of the State of Kentucky for two years next preceding his election. The same provisions applied to the electors, except the period of their residence was raised to three years before the election. While the district was admitted into the Union as a State in February, 1791, and the election was held in May, 1792, when the State of Kentucky had been in existence as a State less than two years, still persons were considered eligible whose continuous residence in the district and in the State of Kentucky covered the constitutional period of eligibility.

Strictly speaking, no person had resided in the State of Kentucky a period of two years, for the State had not existed as a State for that length of time, but people who had lived two years upon the territory which had been cre-

ated into the State of Kentucky were deemed eligible as representatives, within the meaning of our first Constitution.

Likewise, section 114 of the present Constitution of Kentucky provides that no person shall be eligible as judge of the Court of Appeals who has not resided in the district in which he is elected two years next preceding his election.

The act creating seven districts for the several judges of the Court of Appeals was passed in June, 1893, and Jefferson county was made a separate district, known as the "Fourth Appellate District." It was further provided that the judge of the Fourth appellate district should be elected in 1894. If we apply the strict letter of the law, which requires a residence of two years in his district, then no one in this district was eligible for the office of judge of the court of appeals, for the district was not two years old. No one, however has for a moment questioned the correctness of the practical construction given in that instance. Again, the Federal Constitution provides that no person, except a natural-born citizen or a citizen of the United States at the time of the adoption of the Constitution, should be eligible to the office of president. Texas was admitted into the Union in 1845. Can it be claimed that a person born in the republic of Texas prior to its admission into the Union is ineligible to the presidency of the United States for that reason? We do not believe such a construction can be reasonably contended for.

"An interesting case arose in Ohio. In 1867 the State of Ohio ceded to the Federal Government a tract of land in Montgomery county, Ohio, to be used as a soldiers' home. As was usual in such cases, the State relinquished all jurisdiction and control over said tract of land, reserving only

Gibson v. Wood.

the right to serve process, in order that the home might not become an asylum for evil-doers. The Federal Government built its soldiers' home, and continued its jurisdiction thereof for about four years, during which time this territory was as distinct from the State of Ohio as the District of Columbia is distinct from the State of Maryland. At the October election, in 1869, certain inmates of this soldiers' home voted for candidates for clerk of the court of common pleas of Montgomery county. In the contested election case of Sinks v. Reese, 19 Ohio St., 306, [2 Am. St. R., 397], it was held by the Supreme Court of Ohio that these inmates of the soldiers' home were not residents of the State of Ohio, and therefore were not entitled to vote.

In the spring of 1871 the Federal Government ceded the property back to the State of Ohio, although no affirmative action was ever taken by the State towards accepting the territory so ceded back to it. At the October election of the same year (1871) certain inmates of the home again voted for candidates for the office of coroner of Montgomery county. The laws of Ohio required a residence of one year in the State prior to the election as a prerequisite to the right to vote. In the contested election case of Renner v. Bennett, 21 Ohio St., 431, the question was presented as to whether these inmates were entitled to vote at the October election in 1871. The Supreme Court of Ohio had already decided in the case of Sinks v. Reese, *supra*, that from 1867 to the spring of 1871 these inmates of the soldiers' home were not residents of the State of Ohio, and had no right to vote in State elections. When the territory was ceded back to the State of Ohio, in the spring of 1871, these inmates of the soldiers' home immediately became residents of the State of Ohio, but had not been residents for the period of one year prior to the

election in 1871. The question was therefore squarely pre-
sented whether, in considering the eligibility of these in-
mates of this soldiers' home to the right to vote in the
State election, the court should take into consideration
the time they had resided in this same spot while it was
under the jurisdiction of the Federal Government, and was
not a part of the political government of the State of Ohio.
The court held that the time should be counted, and in the
course of the opinion used this language, viz.: 'These 105
inmates of the asylum were therefore residents and citizens
of Ohio at the time of the election. Were they residents
of the "State" for the full year, within the meaning
of the Constitution of Ohio? We think they were. In one
sense, the State is a territory; in another sense, it is a
political organization. These inmates have resided for the
whole year in the same *place*. Territorially, they, and the
asylum in which they reside, have been all the time in the
State. Politically, or, if I may so speak, jurisdictionally,
both have been temporarily out of the State. The expres-
sion is used in both senses. It is used in a territorial
sense in the agreed statement filed in the case. In favor
of the right of suffrage, we think it safe and proper to
give it that meaning in the Constitution. In the primary
and popular sense, the asylum is, and always has been, in
Ohio. It has never ceased to be a part of the State of Ohio
geographically, although the State jurisdiction over it has
been temporarily suspended. Suppose a township or a
part of a township of one county temporarily attached to
another county and reattached to the first; would the legal
voters after each change have to begin *de novo* their twenty
days' residence in the township and their thirty days' res-
idence in the county? I think not. And yet the cases are
supposed to be identical in principle with the one at hand.

Both rest on the same provision of the Constitution, requiring a prescribed length of residence in the State, county, and township.  If there is any difference between the principle involved in two cases, it is in this:  That while in the cases supposed the change of jurisdiction is in fact temporary, in the present case it was necessarily temporary; the jurisdiction having been granted for a temporary purpose, the reversion always remaining in the State.    It seems to us it is sufficient that the voter, at the time of the election, has a "residence," in the political and jurisdictional sense of the term, within the proper political division, and has resided in the same place for the prescribed length of time, to fulfill this requirement of the Constitution.   In such a case it is true, in the primary sense of the words, that there is no change of residence, but merely a change of jurisdiction.   To say that there is a change of residence is to give the words a secondary meaning.'

"In the case at bar the defendant, Wood, has done no act by which he should lose any of his political rights, either as a resident of the town of Enterprise or as a resident of the city of Louisville.   The city of Louisville has seen fit to incorporate the town of Enterprise, and make it a part of the city of Louisville.   In my opinion, when the city of Louisville annexed the town of Enterprise, it adopted the conditions then existing in the town of Enterprise, as to residence and citizenship, as a part of the city government, and former citizens of the town of Enterprise, who thus became citizens of the city of Louisville, were entitled to all their rights, as former citizens  of Enterprise, in determining their eligibility to office in the city of Louisville.

"When the  defendant and his territory became parts

of the city of Louisville, they are entitled to all the benefits that belong to all the other property and citizens of the city of Louisville. To hold otherwise would be to bring persons into the city of Louisville, and to burden them with city taxation and all the burdens of our city government, without granting them all the privileges which it had granted to its other residents. It would put the burdens on all residents alike, but would give different rights to different classes of citizens, by distinguishing the old resident from the annexed resident. It follows that the defendant was eligible to the office to which he was elected, and the temporary injunction must be denied.

"SHACKELFORD MILLER,

"Special Judge."

It follows that the plaintiff's petition did not state a cause of action, and, a demurrer thereto having been sustained, the same was dismissed. The judgment is affirmed.