ATTORNEY GENERAL, *ex rel.* SCOTT, *v.* McCOLEMAN.

1. TOWNSHIPS—CONSOLIDATION—CONSTITUTIONAL LAW.

A statute disorganizing a township and attaching its territory to an adjoining township, and taking effect the day before the annual township election, is not unconstitutional for disfranchising the electors of the disorganized township, since they have a right to exercise in the new township the franchise possessed by them in the old.

2. SAME—STATUTES—CONSTRUCTION.

An act passed before the consolidation act divided the township into two voting precincts, numbered one and two, by a line drawn across the township from east to west, and provided that all territory lying north of the line should constitute precinct number two. Territory lying both sides of the line was contained in the added township. *Held,* that the act did not operate to disfranchise any voter of the added territory, since, upon the taking effect of the consolidation act, the voters of the added territory became electors of the township, and if not within precinct number two, were entitled to vote in precinct number one.

Mandamus by John E. Bird, attorney general, on the relation of Edward Scott and others, to compel Zebina McColeman and others, constituting the township board of the township of Atkinson, to deliver to relators the money, books, and papers of said township pursuant to Act No. 577, Local Acts 1905. Submitted May 8, 1906. (Calendar No. 21,695.)   Writ granted May 14, 1906.

*Frank E. Doremus* (*M. H. Moriarty,* of counsel), for relators.

*Charles H. Watson* and *M. J. Sherwood,* for respondents.

OSTRANDER, J.   Act No. 577, Local Acts 1905, is entitled "An act to disorganize and vacate the township of Atkinson, in the county of Iron, and to incorporate its territory within the adjoining township of Iron River, in

the county of Iron." By the terms of the act the township of Iron River is made the legal successor of the township of Atkinson to all property, and is made liable to pay the lawful indebtedness and claims against the township of Atkinson; the township officers of Atkinson are required, as soon as the act shall take effect, to turn over and deliver to the proper officers of the township of Iron River, the same as if said officers were their successors in office, all moneys, funds, books, papers, files, records, and other property and effects belonging to the township of Atkinson and belonging to their several offices; the township treasurer of Iron River is invested with authority to collect all taxes due and unpaid upon any property in the township of Atkinson, and to enforce the payment of delinquent and other taxes and to credit the township of Iron River with moneys thus collected. The act was ordered to take effect April 1, 1906. That day was Sunday. The following Monday was the day for holding the annual township meeting, and on that day an election was held in the township of Iron River, in which the inhabitants of the territory theretofore constituting the township of Atkinson declined to participate, but, on the contrary, proceeded to hold an election as though that township were still in existence, and, upon demand being made by the officers comprising the township board of Iron River, the officers comprising the township board of the township of Atkinson declined to turn over money, books, or papers. Thereupon the attorney general, upon the relation of the members of the township board of Iron River, applied for a writ of mandamus, to be directed to the persons constituting the township board of the township of Atkinson, requiring them and each of them to deliver the money, books, and papers according to the terms of the act referred to. For answer to the order to show cause, which was granted, the respondents set out that the act of the legislature referred to was void because contravening the provisions of section 1 of article 7 of the Constitution of the State, in that it operated to disfranchise the electors

of the township of Atkinson by providing for the disorganization of that township one day previous to the annual township election without providing any machinery or method by which the electors of Atkinson township could participate in the voting of the taxes or in the election of officers in the township of Iron River, nor was provision made for the registration of the electors of the township of Atkinson in the township of Iron River or the completion or revision of the registration lists in said township of Atkinson.

The reasonable intention of the legislature was that the business of the township of Atkinson, including the registration of its qualified electors, should proceed in the usual way so long as it remained a township. On Sunday, April 1st, by operation of the law, the same people, including the electors, became inhabitants of and electors in the township of Iron River, an organized township possessing the officers and all the machinery of government, and they had the undoubted right to exercise as inhabitants of that township all the rights of citizens possessed by other inhabitants of the same township. The argument that the qualified electors of Atkinson township were disfranchised because they had not for 20 days been inhabitants of the township of Iron River is without force. They had been inhabitants of the territory comprising the township of Iron River. *Gibson* v. *Wood*, 105 Ky. 740 (43 L. R. A. 699); *Renner* v. *Bennett*, 21 Ohio St. 431. No political right of any inhabitant was or was intended to be abridged. We think all the contentions made against the act and its constitutionality are determined by *Attorney General, ex rel. Battishill*, v. *Township Board of Springwells*, 143 Mich. 523.

But respondents further in their answer call attention to the fact that at the same session of the legislature Act No. 596, Local Acts 1905, was adopted, entitled " An act to provide for a new voting precinct to be known as voting precinct number two, in the township of Iron River, in the county of Iron," section 1 of which reads:

" All that territory in the township of Iron River, county of Iron, lying north of the north line of township forty-three, range thirty-five and thirty-six thereof, shall constitute a separate voting precinct, to be known as voting precinct number two, Iron River township."

It is pointed out that three sections of the original township of Atkinson lie south of the north line of township 43 N., range 36 W., and that entire surveyed township 46 N., range 37 W., was a part of the original township of Atkinson; that Act No. 596 took effect March 1, 1906, and can be held to apply only to the territory at that time within the organized territory of Iron River. It is argued that the inhabitants of the three sections and those of the entire surveyed township mentioned, being thus omitted from the territory included within said election district No. 2, were, under any construction of said Act No. 596, disfranchised, because no provision was made for their registration within the township of Iron River. It is made to appear, also, that there were electors residing within the said excepted territory. It is contended that Act No. 596 must be read in connection with and as supplementary to Act No. 577, and that, as so read, the earlier act must be found to be unconstitutional.

This contention has been for the most part already disposed of. There was territory in the township of Iron River at the time Act No. 596 was passed and given effect, both north and south of the north line of township 43 N., and by this act that territory north of the line and east of the west line of range 36 was organized into a separate voting precinct. The remainder of the territory in the township would necessarily be in election precinct No. 1. It is true that the act could have no effect, at the time of its passage, upon any territory, lying either north or south of said line, not a part of said township of Iron River. But on April 1st the inhabitants of Atkinson township became inhabitants of Iron River township, and were, of necessity, if outside of the boundaries of precinct No. 2, within the boundaries of election precinct No. 1. A study

of the map shows that the electors of the township of Atkinson, as well as those of Iron River, living north of the north line of township 43 and west of the west line of .range 36, may have been put to some inconvenience in being required to vote in election precinct No. 1, in the township of Iron River; this depending, however, in degree, upon where the polls were located.   That the operation of either statute interfered with the exercise of political rights by any inhabitant of the township of Atkinson is not made to appear.

The writ must issue as prayed.

CARPENTER, C. J., and McAlvay, HOOKER, and MOORE, JJ., concurred.