CASE 23.—ACTION BY JACOB MEFFERT AND OTHERS AGAINST JAMES .B. BROWN AND OTHERS AS COMMISSIONERS OF THE SINKING FUND OF LOUISVILLE FOR AN INJUNCTION TO PREVENT THE REMOVAL OF PLAINTIFFS FROM OFFICE.—February 23.

# Meffert, &c., v, Brown, &c.

A temporary injunction having been obtained by the plaintiffs, Meffert and others, in an action by them in the Jefferson Circuit Court, Chancery Branch, Second Division, against the defendants, as commissioners of the sinking fund of the City of Louisville, restraining them from removing the plaintiffs from office as license inspectors and clerks of said board, application was made by said board of commissioners to the Chief Justice of the Court of Appeals to dissolve the injunction.

1. Municipal Corporations—Officers—Eligibility.—On an issue as to defendant's eligibility to a city office, the motive of the general council in annexing territory including his residence is immaterial.

2. Municipal Corporations—Annexation of Territory—Validity—Collateral Attack.—Where the necessity for annexing territory

has been determined by the general council of the city in conformity to the statute, and the annexation is consummated without objection by the residents and property owners of the annexed territory, the validity thereof is not subject to collateral attack.

3. Municipal Corporations—Officers—Eligibility—Residence.—Under Ky. Stats., 1909, section 2746 (Russell's Stats., section 536), requiring three years' residence in certain cities before persons can hold office therein, one who has resided in annexed territory for three years is eligible, though the annexation occurs within that time.

4. Municipal Corporations — O ffi c e r s — Eligibility — "Qualified Voters."—Under Ky. Stats., 1909, section 2746 (Russell's Stats., section 536), requiring officers in certain cities to be "qualified voters," one's eligibility is not affected by his failure to register.

5. Elections—Electors—Qualifications.—One may be a qualified voter without exercising the right to vote, registering not conferring the right, but being a condition precedent to its exercise.

6. Municipal Corporations—Officers and Employes—Tenure.—Ky. Stats., 1909, section 3010 (Russell's Stats., section 874), provides that certain officers and employes shall hold their offices at the pleasure of the board, as prescribed by by-laws. A by-law of the board provides that officers and employes shall be elected in June of each year, and that they shall enter upon their duties August 1st following, and serve until their successors are in like manner qualified. Held, That, while the board may remove appointees for cause, and can change the time of election, persons appointed in June of one year are entitled to hold their offices until August 1st of the following year, unless sooner removed for cause.


EXTENDED OPINION, March 25.

Municipal Corporations—By-Laws—Adoption.—In amending a by-law fixing the time for electing officers and employes, the board of commissioners of the sinking fund of Louisville should be governed by a by-law prohibiting the amendment of any by-law, except by repealing it at a regular meeting, after presentation at a previous meeting.


LIEBER & LINCOLN for plaintiffs.


A. E. RICHARDS and GIBSON, MARSHALL & GIBSON for defendants.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE.

The plaintiffs, nine of whom are. assistant license inspectors, and three clerks of the board of commis-sioners of the sinking fund of the city of Louisville, all having been appointed to the offices or positions in question by the board of commissioners, obtained in this action, of the Jefferson circuit court, chancery branch, second division, a temporary injunction re-straining the defendants, James B. Brown, David. Baird, George T. Wood, James F. Grinstead and William Heyburn, present commissioners of the sink-ing fund, from removing them from their several of-. fices or positions. The case is now before me upon a motion made by the commissioners to dissolve the injunction. The commissioners are made a body cor-porate by section 3010, Ky. Stats. (Russell's Stats., section 873), with certain powers and duties therein prescribed. It is alleged in the petition that two of. the five members composing the board oppose and. will vote against the removal of plaintiffs from the offices or positions held by them, respectively, two favor and will vote for their removal, and that the fifth and remaining member of the board likewise favors, and, if permitted to do so, will vote for their removal from office, but that he is not legally a mem-ber of the board of commissioners, and was not eligi-. ble to membership therein, at the time of his election.

The injunction was sought upon two grounds: First, because George T. Wood, one of the commissioners,. being, as alleged, ineligible, and not having been legally elected or qualified as commissioner, has no authority to act as a member of the board; second,. because, as further alleged, plaintiffs were elected by

the commissioners for a term of one year, and can not be removed before the expiration of that year. The alleged ineligibility of Wood is based upon the grounds that he was not, at the time of his election, a qualified voter of the city of Louisville, and that the territory including his residence had not legally been annexed to, and made a part of, the city, notwithstanding the ordinance enacted by the general council to that effect, and, as alleged, for the sole purpose of getting Wood within the corporate limits of the city that he might be elected a commissioner of the sinking fund. We think it wholly immaterial what the motive of the general council was in annexing to the city the territory including Wood's residence, if he was thereby rendered eligible to the office of commissioner to which he was later elected. The right to determine what territory shall or shall not be embraced in annexation ordinances is conferred by statute upon the general council of the city. It is true that persons whose homes or property lie within the territory sought to be annexed may, by proper proceedings instituted in the courts, resist such annexation upon the grounds prescribed by statute, in which case the question of whether they or their property shall be taken within the corporate boundary of the municipality becomes one for the adjudication of the courts. But where the necessity for the annexation has been determined by the general council of the city in conformity to the statute, and the annexation consummated without objection or resistance from the residents and property owners of the annexed territory, the validity thereof can not subsequently be collaterally attacked. Chambers v. Baldwin, 91 Ky. 122, 15 S. W. 57, 12 Ky. Law Rep. 699, 11 L. R. A. 545, 34 Am. St. Rep. 165.

It is true, as claimed by plaintiffs, that Wood had not, at the time of his election as commissioner, resided in the city of Louisville three years, and that section 2746, Ky. Stats. (Russell's Stats., section 536), applicable to cities of the first class, provides: "No person shall be eligible to any office who is not at the time of his election a qualified voter of the city and who has not resided therein three years preceding his election." The fact, however, that Wood did reside for three years next before his election within the territory that was annexed to the city shortly before his election as commissioner was, it would seem, sufficient to meet the requirements of the statute, supra. I quite agree with the court below that the opinion in the case of Gibson v. Wood, 105 Ky. 740, 49 S. W. 768, 43 L. R. A. 699, 20 Ky. Law Rep. 1547, is conclusive of the question under consideration, as the following excerpt therefrom will show: "The city of Louisville has seen fit to incorporate the town of Enterprise, and make it a part of the city of Louisville. In my opinion when the city of Louisville annexed the town of Enterprise, it adopted the conditions then existing in the town of Enterprise, as to residence and citizenship, as a part of the city government, and former citizens of the town of Enterprise, who thus became citizens of the city of Louisville, were entitled to all their rights, as former citizens of Enterprise, in determining their eligibility to office in the city of Louisville. When the defendant and his territory became parts of the city of Louisville, they were entitled to all the benefits that belong to all other property and citizens of the city of Louisville. To hold otherwise would be to bring persons into the city of Louisville, and to burden them with city taxation and all the burdens of city govern-

ment, without granting them all the privileges which it had granted to its other residents."

The fact that Wood did not register can not affect the question of his eligibility to the office of commissioner of the sinking fund. The act of registering is only one step towards voting, and it is not one of the elements that makes the citizen a qualified voter. If at the time of his election as a commissioner of the sinking fund Wood had been a resident of the city three years and by registering before any election during that time would have been entitled to vote at such election, would his failure to register have destroyed his legal status as a qualified voter? Obviously not; the only legal effect of the failure to register would be to deprive him of a vote in the election for which the registration was required. The term, "qualified voter" is defined by section 145 of the Constitution in declaring who shall be entitled to vote. One may be a qualified voter without exercising the right to vote. Registering does not confer the right; it is but a condition precedent to the exercise of the right. When the defendant, Wood, was brought into the city of Louisville, he became as fully eligible to the office he now holds as if he had resided in Louisville three years, and in the precinct 60 days preceding his election, and had during the whole of that time registered previous to each city, county, or State election, as required by law.

The second contention urged by plaintiffs is not so easily disposed of. The powers of the commisisoners of the sinking fund of the city of Louisville with respect to the offices or positions under their control are defined in subsection 2, section 3010, Ky. Stats. (Russell's Stats., section 874), which provides: "Said commissioners shall elect and appoint all officers and

employes of said sinking fund, and shall prescribe their duties and fix their compensation. And all officers and employes of said sinking fund, except the president treasurer and secretary, shall hold their offices at the pleasure of the board as prescribed by the by-laws." Section 5 of the by-laws adopted by the board of commissioners provides: "The commissioners shall, in the month of June, of each year, elect an attorney, a chief assistant license inspector, assistant license inspectors, together with such other employes as they may deem necessary. They shall before entering upon the duties of their respective offices, qualify and execute bond in the same manner and under the same conditions as are required of the treasurer and secretary. Said officers and employes, after the approval of their respective bonds, and being duly qualified, shall enter upon the discharge of their duties upon the first day of the succeeding August, and continue to serve until their successors are in like manner qualified."

The election of plaintiffs to the offices or positions, respectively, they now hold, occurred June 8, 1908. They each executed bond, took the necessary oath, and began the performance of their official duties August 1, 1908, and it is insisted by them that under and by virtue of the above by-laws they are entitled to continue, each in the office held by him, for one year from June 8, 1908, and until his successor in like manner qualifies. Whether they can do so or not depends upon the construction given the by-law in question. It will be observed that the statute, supra, authorizes the commissioners of the sinking fund to elect the officers or employes in question for an indefinite time or fixed term, as they by their by-laws may determine. The officers thus elected "shall hold their offices at the

pleasure of the board as prescribed by the by-laws."
If, therefore, the by-laws expressly fix the term, or
declare when the election shall be held, and that the
officers elected shall "continue to serve until their suc-
cessors are in like manner qualified," and, in addition,
declare when their successors shall be elected, it nec-
essarily follows that the former hold their offices until
the time fixed by the by-laws for the election and qual-
ification of their successors. As the by-law under
which the plaintiffs were elected provides that the
commissioners shall elect in the month of June of each
year, and they were elected in June, 1908, it is patent
that they are entitled to continue in office until June,
1909, or until their successors, then elected, shall have
qualified. This construction of the by-law must nec-
essarily prevail if any meaning or effect is given the
words of the statute "as prescribed by the by-laws,"
and that they were used with a special meaning is
manifest, as they apply alone to subordinate officers,
like plaintiffs, of a city of the first class; the statute
with respect to cities of the second, third, fourth, fifth,
and sixth classes containing different provisions as
to the election and removal of such subordinate
officers. I would not be understood as holding that
the commisisoners of the sinking fund of the city of
Louisville may not, for cause and after a fair hearing,
remove from office those whom they elect or appoint
thereto, or that they can not fill vacancies, for they
clearly possess such power.

This question arose in the case of Combs, Mayor, v.
Bonnell, 109 S. W. 898, 33 Ky. Law Rep. 219, in which
there was an attempt, on the part of the board of
police and fire commissioners of Lexington, a city of
the second class, without cause to remove Bonnell, a
member of the fire department, and appoint another.

in his place. Section 3138, Ky. Stats. (Russell's Stats., section 1145), provides: "The said commissioners shall have full control over the police and fire departments of the city, together with all the property and paraphernalia thereof, or belonging thereto, and may make or ordain and put into execution such by-laws, rules and regulations for the government of said departments as may be deemed expedient, and may prescribe the qualifications of the firemen and officers and members of the police and fire departments respectively. They shall appoint a chief of police and all policemen and a chief of the fire department and all subordinates, and shall fix the salaries of the chiefs of all departments and prescribe their duties, and they may grade the officers of said departments and prescribe their several duties, and may remove them with or without cause." Pursuant to the powers conferred by the foregoing section the board of police and fire commissioners adopted a rule, in substance, providing that in order to suspend or remove a member of the police or fire department, written charges must be filed with the board of police and fire commissioners, and a copy thereof served upon the offending officer, notifying him of the meeting of the commisisoners to hear the charges, and further providing that the officer should have the right to be represented by counsel and have witnesses in his behalf, and also "that the proceeding of the commission in investigating all charges against members of the departments, and in all cases of suspension and removal, shall be governed by the customary rules of evidence and the Kentucky statutes regulating the control and management of the police and fire department." The court of appeals affirmed the judgment of the circuit court which, by injunction, re-

strained the board of police and fire commissioners from removing Bonnell, and in doing so held that, although the regulation of internal local affairs, such as the election or employment of firemen, etc., adheres in a municipal corporation as an incident of its character as a corporation, and can not be directly regulated and controlled by the Legislature, it is competent for the State in creating such corporation to provide by what body of the local magistracy such function shall be exercised, and that as the board of police and fire commissioners of the city of Lexington upon whom the Legislature had conferred the power to control the police and fire departments of the city had enacted rules relating to the removal of members of the departments, they could not effect their removal in violation of such rules. In respect to the reasonableness of the rules adopted by the board of commissioners, and their want of power to disregard them, the court said: "This regulation was a clear and proper exercise of the powers conferred upon the police and fire commissioners, and, until repealed or changed by them in an official meeting and by proceedings of record duly adopted, it was alike binding upon the commissioners and a protection to the members of the two departments. It inaugurated a kind of civil service in these departments, and is a wise regulation, that should be sustained and encouraged, rather than ignored or violated. Its observance will stimulate the police and firemen to a better discharge of their duties by removing from over their heads the constant danger of capricious discharge by their superiors. Policemen and firemen are servants of the city, not of the commissioners. The latter should not have it in their power to punish the police and firemen if they refused to serve the personal ends of the com-

missioners, or to reward them if they did. They ought to be discouraged from political activity, rather than rewarded for zealous partisanship. All these desirable ends, insuring the greatest conscientious service to the public, while detracting from the power of the political boss, are brought about by an observance of a civil service regulation. Appellant was not cited to appear for trial by the board, nor was he accused of dereliction, or removed for cause. The above regulation alone was a complete protection to him against such arbitrary discharge. The whole force of the fire department was discharged in the same order. Immediately all were reappointed, save appellee, and such others as were intended to be dropped, whose places were filled by substitutes. We think this was but an indirect way of doing that which the commissioners could not do directly, which will not be allowed to prevail."

The power of the Legislature, to confer upon the commissioners of the sinking fund of Louisville the right to elect and appoint necessary officers and employes, prescribe their duties and fix their tenure of office as they may provide by by-laws, can not be questioned; and when the commissioners have acted in pursuance of the powers thus conferred, and by a by-law fixed the time of the election of such officers in the month of June of each year, they are, without a change in the by-law, powerless to hold the election at any other time. They may, however, by amending the present by-law, or adopting a new one, change the time of election as desired. It is concluded, therefore, that under the terms of the statute and by-law, the plaintiffs are entitled to hold their offices, respectively, until August 1, 1909, the date on which their successors, to be elected in June, will qualify, unless

sooner removed for cause, or the commissioners
amend the by-laws and thereby change the time of
holding the election.   This conclusion requires that
defendant's motion to dissolve the injunction granted
by the circuit court be overruled, which is accordingly
done.   All the members of the court were consulted
before a decision of the motion was had, and all concur
in the views herein expressed.

EXTENDED OPINION, MARCH 25, 1909.

In the matter of the defendants' petition for an
extension of the opinion herein, it is difficult to see
how there can be any misunderstanding of the mean-
ing of the opinion as to the power of the commis-
sioners of the sinking fund of the city of Louisville to
regulate by a change of its by-laws the time for elect-
ing its various subordinate officers and employes. The
opinion closes its conclusion as to this question with
the following language: "They may, however, by
amending the present by-law, or adopting a new one,
change the time of election as desired.   It is con-
cluded, therefore, that under the terms of the statute
and by-law the plaintiffs are entitled to hold their
offices, respectively, until August 1, 1909, the date on
which their successors, to be elected in June, will
qualify, unless sooner removed for cause, or the com-
missioners amend the by-laws and thereby change the
time of holding the election.   *   *   *"
This language necessarily implies, and in fact de-
clares, that the commissioners are not required to wait
until plaintiffs' terms of office expire to change or
repeal the present by-law as to the time of electing
its subordinate officers and employes, but may make
such change in the by-law sooner, or at any time, and

thereby terminate plaintiffs' terms of office and elect their successors before August 1, 1909. Section 24 of the by-laws provides, however, that: "The board shall not alter or amend any by-law in any way except by repealing it, and this can only be done at a regular meeting after having been presented at a previous meeting." So, whatever action may be taken by the commissioners with respect to the by-law in question, they should be controlled by the provisions of the section, supra.

The opinion delivered on the motion to dissolve the injunction is extended as herein indicated. As in the matter of passing on the motion to dissolve the injunction, all the members of the court were consulted as to this extension of the opinion, and all concur therein.