PAUL R. STOUT, Petitioner-Appellant, *v.* Hon. WILLIAM E. BLACK *et al.,* as Chairmen and members of the Du Page County Electoral Board, a/k/a the County Officers Electoral Board, *et al.,* Respondents-Appellees.

(No. 72-288;

Second District—November 9, 1972.

Gerald M. Sheridan, of Wheaton, for appellant.

William V. Hopf, State's Attorney, and John Perry, both of Wheaton, for appellees.

PER CURIAM:

Petitioner, Paul Stout, appeals from a judgment of the trial court which held that his nominating petition as an independent candidate for Representative in Congress for the 14th Congressional District of Illinois was insufficient to place him on the November, 1972 ballot. The respondents, comprising the Election Board for the district, had previously sustained objections which resulted in Petitioner having fewer signatures than the 5,000 required under the applicable statute. Specifically, the Board found that of the 6,832 signatures on the petition, 1,422 or more could not be counted because the signers were not registered voters, and 882 were disqualified because the signers had voted in the last primary election at which candidates for Representative from the 14th district were selected. The circuit court affirmed the order of the Electoral Board. We affirm.[1]

We have considered three issues: (1) Whether the signer of a nominating petition of an independent candidate for Representative in Congress must be registered to vote at the election to be a "qualified voter" who may sign the petition under the Election Code (Ill. Rev. Stat. 1971, ch. 46, sec. 10—3); (2) whether Article 10—4 of the Election Code (Ill. Rev. Stat. 1971, ch. 46, sec. 10—4), providing that any person who voted in a preceding primary election is precluded from signing an independent candidate's nominating petition for an office for which candidates were selected at the primary, is constitutional; and (3) whether section 10—3 of the Election Code, providing that the nominating papers of an independent candidate for Congress must have at least 5,000 signatures of qualified voters in the first election following the re-apportionment of the district, is constitutional (when compared with the requirement of section 7—10 that 600 qualified primary electors of the candidate's party in his newly-appointed congressional district must sign).

Whether the legislature intended to make registration a prerequisite for signing the nominating petition of an independent candidate for a

---

[1] On Petitioner's motion, we fixed an expedited schedule for filing briefs and by agreement of the parties that there were no substantial issues of fact, waived abstracts or excerpts. We announced our decision in a minute order following the oral arguments and the filing of briefs, specifying that a written opinion would follow.

congressional office must be determined from the language used in the Election Code, an admittedly difficult task. Petitioner notes that in Section 3—1 of the Code (Ill. Rev. Stat. 1971, ch. 46, sec. 3—1), entitled "Qualification of Voters", there is no reference to registration; and that a voter is "qualified" by residence, citizenship and age. He points to various provisions pertaining to registration which refer to registering persons who have the qualifications to vote, indicating that, while registration may be a prerequisite to voting in a specific election, it is not a part of the term "qualified voter." *E.g.*, ch. 46, *supra*, sections 4—3, 4—10, 4—18, 4—23, 5—3, 5—5, 5—9, 5—10, 5—11, 5—15, 5—16, 5—25, 17—10, 18—5, 6—27, 6—29, 6—37, 6—38, 6—41, 6—59, 6—65.

The Section of the Election Code which deals specifically with the nominating process as applied to nominating petitions for independent candidates (Ill. Rev. Stat. 1971, ch. 46, sec. 10—3), provides, as material here:

> "* * * For the first election following a redistricting of congressional districts, nominating papers for an independent candidate for congressman shall be signed by at least 5,000 qualified voters of the congressional district * * *."

and Section 10—4 requires that as to nominating petitions under the Article, it be certified that,

> "[T]he signatures * * * were signed in his presence and are genuine, and that to the best of his knowledge and belief the persons so signing were at the time of signing the petition qualified voters (and in cities, villages and incorporated towns in which voters are or may be required to be registered, that they were also at the time of the signing * * * duly registered voters) of the political division for which the candidate or candidates shall be nominated * * *"

Petitioner contends that the term "qualified voters" in these sections merely refers to the qualifications for voting set forth in Article 3; and that when the legislature intended to require registration, as in municipalities referred to in the parenthetical clause in Section 10—4, it expressly so stated. However, this interpretation would mean that signers of the petition in certain municipalities would be required to be registered while all other signers would not. Yet the statutory scheme cuts in the other direction, requiring that all voters in a congressional election be registered as a prerequisite to voting. Ill. Rev. Stat. 1971, ch. 46, sec. 4—1; see also U.S. Const. art. 1, sec. 2.

We are persuaded that when the various provisions of the Election Code are read *in pari materia* and within the purview of the purposes of the Code, the legislature intended that the signers of nominating peti-

tions for an office to be voted upon in an election in which registration is a prerequisite to voting must be registered. In our view a "qualified voter", as the term is used in Section 10—3, refers to a person who has met all the statutory qualifications to vote, including registration when registration is required in the election for the particular office for which the nomination is made. It does not seem reasonable to conclude that the independent nominating process should be less protected than the election process since both have the effect of placing the person's name on the ballot, and it may well be possible that the nomination and a conceivable splitting of votes could control the election.

■■ The State may impose reasonable limitations on the eligibility to participate in the electoral process, including a requirement of registration, without offending constitutional strictures against depriving a citizen of his right to participate fully in free and equal elections under Article 3, Section 3 of the Illinois Constitution. (See *People ex rel. Grinnell v. Hoffman* (1886), 116 Ill. 587, 611.) We think it has done so by requiring the signers in this instance to be registered voters. See *Davis v. Board of Elections of City of New York* (1958, N.Y.), 153 N.E.2d 879; *Markowitz v. Board* (1965, Mich.), 133 N.W.2d 209; *State ex rel. Hawke v. Myers* (1936, Ohio), 4 N.E.2d 397.

We are confirmed in this view when we consider that without the registration requirement it would be most difficult to insure the integrity of the election process. The procedure set forth in Article 10 for objecting to nominating papers would have little substance without the requirement. Section 10—8 provides that certificates of nomination and nominating papers shall be deemed valid unless a written objector's petition is filed within 5 days of the last day for filing nominating papers. The petition must fully state the nature of the objections, the interest of the objector, and the relief requested. Within 24 hours of its filing the petition and supporting papers must be mailed to the chairman of the electoral board; he must call a meeting, to be held not more than 5 days after receipt of the papers. In this short time span there is no practical way in a congressional election to determine the qualifications of the signers and the veracity of their signatures unless registration records are available. We cannot conclude that the legislature intended to jeopardize the integrity of the process in this way.

To our knowledge, the question before us has not previously been decided by any Illinois court. Petitioner has referred to *People v. Village of Forest View* (1961), 21 Ill.2d 384, but we can find no answer to the Election Code problem before us by reference to a case which deals with assent to annexation. That case did not attempt to interpret the provisions of Article 10, nor consider the difficulties of safeguarding the election

process against fraud. Authorities in other states are of limited value since the inquiry is to particular language in various election codes. Other jurisdictions which have considered the meaning of the term "qualified voter" in the context of the particular election statute involved have split on the question whether a qualified voter must be a registered voter. See Anno. 100 A.L.R. 1308, and Later Case Service.

■■ We also reject petitioner's contention that Section 10—4 of the Code is unconstitutional in providing that persons having voted in a preceding primary election are precluded from signing an independent's nominating petition for an office for which candidates were selected at the primary. In *Jackson v. Ogilvie*, 325 F. Supp. 864, aff'd. 29 L.Ed.2d 705, the District Court said in what we consider *dicta*, that this provision is not only constitutional, but mandatory under the one-man, one-vote rationale of *Baker v. Carr* (1962), 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663. While we decline to go so far as to deem it mandatory (see *Jenness v. Fortson* (1971), 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554), we do think it a constitutional means of protecting the integrity of the election process. As noted in *Jackson*, the Illinois Election Code offers the elector an option. In addition to the Section 10—4 restriction on signing nominating petitions after voting in a primary, Section 7—43(c) provides that one signing the petition of an independent cannot later vote in a primary at which candidates for the same office are being selected. This provision has been held constitutional on the basis that the nominating process in Illinois would be endangered by allowing non-party members to participate in a party primary. (*Rouse v. Thompson* (1907), 228 Ill. 522, 547-548.) This reasoning is equally applicable here. The danger of a non-party member attempting to subvert the party's best candidate while at the same time putting his desired candidate on the ballot exists regardless of whether the primary comes before or after the signing of the petition. Allowing a person to take part in nominating two people for the same office in the same election can only lead to fraud and the destruction of party organization. See *Katz v. Fitzgerald* (1907 Cal.), 93 P. 112.

The fact that Section 10—4 has the effect of disallowing signatures of some people who did not actually vote for a candidate for the particular office in the primary, or whose candidate did not win the nomination, does not render the statute unconstitutional. Since a primary is conducted by closed ballot, no statute could be drawn more narrowly.

■■ Petitioner also challenges Section 10—3 of the Code, as amended by House Bill 3560, effective December 1, 1971, which provides that in the first election following a redistricting of congressional districts, petitions for independent candidates for nomination for Congress must contain 5,000 signatures. Section 7—10, as amended by the same bill, re-

172

quires 600 signatures on the petition of party candidates for Congress.

The 5,000 signature requirement equals only 2 to 3% of the registered voters in the 14th district, and all districts are substantially equal in population. (Ill. Const. art. 4, sec. 3(a).) This percentage is less than the 5% requirement upheld in *Jackson v. Ogilvie, supra.* It is a reasonable limitation serving a compelling State interest, and is sufficiently narrow to satisfy due process.

Nor does the fact that an independent must acquire 10 times the number of signatures required of a party candidate violate equal protection. In *Jackson,* the court upheld provisions under which Jackson was required to obtain more than 14 times as many signatures as persons seeking nomination from either of the principal parties. A party candidate, in addition to submitting nomination petitions, must survive a party primary to have his named placed on the ballot. The difference in requirements as to party and independent candidates cannot be presumed to be inherently more burdensome on the independent, and does not discriminate against independents in violation of equal protection.

The judgment below is affirmed.

Judgment affirmed.