**STATE of Missouri ex rel. SOCIALIST WORKERS' PARTY OF MISSOURI, and Barbara Mutnick, Relators,**

**v.**

**James C. KIRKPATRICK, Secretary of State, State of Missouri, Respondent.**

**No. 58784.**

Supreme Court of Missouri,
En Banc.

Sept. 11, 1974.

Robert M. Sears, St. Louis, Steven K. Brown, University City, for relators.

John C. Danforth, Atty. Gen., John C. Klaffenbach, C. B. Burns, Jr., Asst. Attys. Gen., Jefferson City, for respondent.

HOLMAN, Judge.

This is an original proceeding in mandamus. Relators seek to require the Secretary of State to review their nominating petition and to determine whether it contains a sufficient number of signatures of "qualified voters" to warrant inclusion on the ballot for the general election to be held on November 5, 1974. The question presented for decision is whether the persons signing said petition must be registered voters.

The nominating petition in question was filed in an attempt to comply with the provisions of Sections 120.160 and 120.200.[1] It purports to nominate relator Mutnick as the candidate of relator Socialist Workers' Party for the office of United States Senator. Section 120.160(3) provides that

1. All statutory references are to V.A.M.S.

". . . the petition shall be signed by a number of *qualified voters* in each of the several congressional districts which is equal to at least one percent of the total number of votes cast in the district for governor at the next preceding gubernatorial election, or by a number of qualified voters in each of one-half of the several congressional districts which is equal to at least two percent of the total number of votes cast in those districts for governor at the next preceding gubernatorial election." (emphasis added). The petition contained 29,014 signatures which would be a sufficient number to comply with the statute if they were all valid. However, respondent says that only 6,722 of that number are registered voters and that 17,844 signatures of registered voters are necessary in order to comply with the statutory requirements. Therefore, respondent has refused to certify said petition for inclusion of relators on the ballot.

To further delineate the foregoing question for decision we must determine whether the meaning of the words "qualified voters" as used in the statute shall include a requirement for registration in addition to other qualifications specified in the Constitution and statutes.

It should be noted that this court recently decided, primarily on the basis of Section 126.151, that signers of an initiative petition must be registered voters. Scott v. Kirkpatrick, No. 58,584, 513 S.W.2d 442 (Mo.1974). The reason that case and the instant proceeding have arisen is that our general constitutional and statutory provisions relating to the persons who may vote have not specifically included the requirement of registration because, prior to 1973, many voters in this state were not required to be registered. It is now provided, however, by the 1973 enactment of Section 114.016(1) that "No person shall be per-

mitted to vote in any election unless he is duly registered and unless his name thereby appears in both the county record and the precinct record for the county and precinct in which he resides." [2]

Before discussing the contentions of the parties we consider it advisable to set out certain other constitutional and statutory provisions that appear applicable. Art. VIII, Sec. 2, Const.1945, V.A.M.S. provides that "All citizens of the United States, including occupants of soldiers' and sailors' homes, over the age of twenty-one [3] who have resided in this state one year, and in the county, city or town sixty days next preceding the election at which they offer to vote, are entitled to vote at all elections by the people." Section 5 of said Article states that "Registration of voters may be provided for by law." Section 11.021 provides that "Only citizens of the United States, including residents of soldiers' and sailors' homes, over the age of twenty-one years who have resided in this state one year, and the county, city or town sixty days immediately preceding the election at which they offer to vote, shall be entitled to register and vote at all elections by the people." Section 1.035 (enacted as a part of the 1973 law, supra) provides that "Whenever the word 'voter' is used in the laws of this state it shall mean registered voter, or legal voter." And it is of interest to note that in the chapter on Initiative and Referendum, Section 126.011(2) defines "Qualified voter" as "one who is qualified to vote under the provisions of Section 111.021." (see supra).

As heretofore stated the petition in question is required to be signed by a certain number of "qualified voters." It is the contention of relators that the words "qualified voters" as used in Section 120.-160 means any voters that comply with the basic conditions set out in Art. VIII, Sec-

---

2. A very limited exception appears in Sections 111.031 and 111.041 which provide a method whereby unregistered persons who have resided in this State for more than 30 days and less than one year may vote for presi-

dential and vice-presidential electors but for no other officers.

3. Now age 18 as required by the 26th Amendment to the U.S. Constitution adopted June 30, 1971.

tion 2 which does not mention registration. They state further that the Act of 1973 dealt only with registration and elections, and therefore there was no intent that Section 27 (Section 1.035, supra), which did not contain the words "qualified voters" would apply to Section 120.160 which relates to new parties and nominating petitions. It is their further contention that if we hold that Section 27 is applicable to Section 120.160 then it is unconstitutional. We need not discuss that contention because we have determined that the meaning of the phrase "qualified voters" as used in Section 120.160 may be decided without resort to or consideration of Section 27.

The principal contention of respondent, as stated in his brief, is that " 'Qualified voter' as the words are used in Subsection 3 of Section 120.160, RSMo means a person who meets the constitutional qualifications for voting, Section 2, Article VIII, and who is registered to vote, because a person is not a qualified voter where there is mandatory statewide voter registration unless he has registered to vote." We have concluded that respondent's contention is correct.

■ While there have been cases holding both ways on the question here presented it is our view that the better reasoned cases are those that rule that a "qualified voter" is one that, in addition to other qualifications, must be registered where such is required as a condition for voting. In this connection see the definition in 29 C.J.S. Elections, § 1(8), p. 23, which states that "A 'qualified voter' is one having the constitutional qualifications for the privilege, who is duly registered pursuant to law, and has the present right to vote at the election being held." Moreover, almost a century ago, this court in the case of State ex rel. Woodson v. Brassfield, 67 Mo. 331, 336 (Mo.1878) stated that "While the registration law was in force, they only were qualified voters whose names were placed on the registra-

tion books. This was the final, qualifying act, and no matter if a citizen possessed every other qualification, if not registered, he was not a qualified voter. It was not the right to register which constituted one a qualified voter, but the fact being registered as such, was also essential. A qualified voter is one who by law, at an election, is entitled to vote. If, by the law, a person was not entitled to vote, whether in consequence of a disability which deprived him of the right to register, or of his neglect to register with a perfect right to do so, he was equally disqualified."

■ A case very similar to the instant one is Stout v. Black, 8 Ill.App.3d 167, 289 N.E.2d 456 (1972). In that case the court stated that "We are persuaded that when the various provisions of the Election Code are read in *para materia* and within the purview of the purposes of the Code, the legislature intended that the signers of nominating petitions for an office to be voted upon in an election in which registration is a prerequisite to voting must be registered. In our view a 'qualified voter', as the term is used in Section 10–3, refers to a person who has met all the statutory qualifications to vote, including registration when registration is required in the election for the particular office for which the nomination is made. It does not seem reasonable to conclude that the independent nominating process should be less protected than the election process since both have the effect of placing the person's name on the ballot, and it may well be possible that the nomination and a conceivable splitting of votes could control the election." 289 N.E.2d 458, 459. Other cases supporting our conclusion are Scott v. Kirkpatrick, supra, Defilipis v. Russell, 52 Wash.2d 745, 328 P.2d 904, Lane v. Henderson, 39 Ariz. 457, 7 P.2d 588 (1932), Williams v. Polk County Comm'r & Board of Education of Polk County, 176 N.C. 554, 97 S.E. 478 (1918), Moorer v. State, 244 S.C. 102, 135 S.E.2d 713 (1964), Richardson v. Radics, 21 N.J. Misc. 466, 35 A.2d 425 (1943) and Clark v.

City of Statesville, 139 N.C. 490, 52 S.E. 52 (1905).

As indicated, we are of the view that at the time it enacted Section 120.160(3) in 1969 the General Assembly must have intended that to be a "qualified voter" thereunder one must have been registered if he resided in an area where registration was required. The legislature is presumed to have known of the Brassfield decision, supra, at the time it chose the words "qualified voters" as a requirement for signing. Moreover, as indicated in Stout, supra, it is not reasonable to conclude that the legislature intended to make nomination by petition any less protective of the election process than nomination in a primary election in which registration of voters was required at that time in certain areas.

Our decision does not conflict with the constitutional provisions relating to qualifications of voters. While registration is not mentioned in Art. VIII, Sec. 2, another section of the same Article provides that registration may be provided for by law. As a matter of fact registration was required in many areas at the time Section 2 was adopted. Therefore, the people at the time of its adoption, knew that the statement therein that citizens possessing certain qualifications "are entitled to vote at all elections by the people" was not true in certain cities and counties unless the voter was also registered. And the registration requirement is recognized in the statutory qualification section, i. e., 111.021, supra.

For the reasons stated we rule, as heretofore indicated, that relators' petition was not sufficient because it did not contain the required number of signatures of "qualified voters."

Our alternative writ should be quashed. It is so ordered.

All concur except SEILER, J., who dissents in separate opinion filed.

SEILER, Judge (dissenting).

I respectfully dissent. In my opinion, the court in the present case, as in the case involving the signers of initiative petitions, Scott v. Kirkpatrick, No. 58584, Mo., 513 S.W.2d 442, also decided this date, is engrafting registration requirements upon statutes which do not deal with voting at all, but pertain exclusively to the signing of petitions. As pointed out in my dissent in the Scott case, registration is a police measure designed to prevent vote frauds at elections. It is not directed at the signing of nominating petitions nor to the forming of new political parties.

Even if we do look to voting to derive a definition of the words "qualified voter" as they relate to nominating petitions, it is reasonable to conclude that a qualified voter was not intended by the legislature to mean registered voter. For example, Chapter 114, to which reference is made in the majority opinion, speaks of "general registration of electors qualified to vote" (Sec. 114.040, subd. 2) which means that a voter—one who meets the age and residence requirements—is entitled to register. It makes no sense to say that the legislature intended that qualified voter means registered voter, and then intended to require a general registration of electors registered to vote. The same would be true as to Sec. 120.460, RSMo 1969, V.A.M.S., which provides no one can vote in a primary unless he is a "qualified voter of the precinct and duly registered therein." If the majority opinion is correct, then as a qualified voter a person would already be registered and the language requiring his registration would be unnecessary. Likewise as to Sec. 117.020, RSMo 1969, V.A. M.S., referring to Kansas City and requiring "a registration of all qualified voters." If qualified voters means registered voters as the majority opinion holds, then the above language means there must be a registration of all registered voters. No doubt there are many other such incongruities showing that the legislature did not intend qualified voters to mean registered voters, but time does not permit searching them out.

As the majority opinion states, there is a division of respectable authority on the

proposition; a number of courts hold that qualified voters do not have to be registered in order to sign petitions on the basis that "qualified voters" has reference only to the qualifications prescribed by the constitution; that registration is not a substantive qualification of an elector; that registration pertains to the regulation of the exercise of the right of suffrage, not to the qualifications for the right. The cases are collected in an annotation in 100 A.L.R. 1308.

The case of State ex rel. Woodson v. Brassfield, 67 Mo. 331 (1878), does not seem to me to be any authority for the proposition that a qualified voter who can sign a petition for a new political party as used in Sec. 120.160 means registered voter. The Brassfield case involved a township election on the question of whether there should be a county subscription to capital stock of a railroad. The 1865 constitution, which required universal registration, also provided that the legislature could not authorize a county to become a stockholder in a railroad unless "two-thirds of the qualified voters of such county . . . at a regular or special election . . . shall assent thereto." At the election there were 385 votes for and 102 against the proposition. The question before the court was whether the two-thirds majority was to be of the total registered voters in the township or only two-thirds of those voting at the election. The relator was attempting to enjoin the county court from issuing the bonds to purchase the stock and offered to prove that on the date of the election there were 600 voters on the registration list. The trial court refused to admit the evidence and dissolved the temporary injunction. On appeal the judgment was reversed, the court holding that the requisite number of registered voters did not assent. To have held otherwise would have meant that the two-thirds majority might be made up of twenty people if only thirty people actually voted, despite the fact that 600 were registered to vote. It was in the context of de-

termining that it required a two-thirds vote of those registered, not two-thirds of those voting, that the statements quoted in the majority opinion were made in the Brassfield case. Under those circumstances, of course the number of persons who were registered and eligible to vote would be the "qualified voters" for the purpose of calculating a two-thirds majority. I do not believe the quoted language has any application to the meaning of the words "qualified voters" in Sec. 126.100, dealing with signatures on petitions for new political parties and nominees.

Furthermore, the portions quoted in the majority opinion from the Brassfield case did not receive a majority vote. The quoted portion was in the opinion by Henry, J., in which only Sherwood, C. J. concurred. Hough, J. filed a separate opinion and the other two judges, Napton and Norton, JJ., did not sit.

The other case principally relied on by the majority opinion herein, Stout v. Black, 8 Ill.App.3d 167, 289 N.E.2d 456 (1972), is not comparable, because the other provision of the Illinois Election Code which was read in *pari materia* with the term "qualified voter" specifically required that as to nominating petitions, the signers, if living in a town in which voters were required to be registered, must be registered voters to sign. We have no such comparable provision in our chapter 126 on signing nominating petitions or petitions for new political parties.

Finally, the principal opinion states that it is not reasonable to conclude that nomination by petition be "less protective of the election process" than nomination by primary election. The legislature did, however, expressly establish the requirement of registration for those voting in primary elections in Sec. 120.460 which provides: "No person shall be entitled to vote at any primary election unless he is a qualified voter of the precinct and duly registered therein, if registration is required by law." By this section, the legislature demonstrated its intent to require registration with

respect to primary elections, and could easily have done likewise had it intended the same with respect to nominating petitions. This it did not do. Thus, the more reasonable conclusion is that the legislature did indeed take a different view of the petition process.

In reality, we are making a policy decision in this case, electing to make it more difficult for new political parties to be formed, by requiring the signers to be registered voters when the General Assembly made no such specific requirement. We should interpret Sec. 126.100 liberally, in favor of extending the political election process and not add to the difficulties of getting new points of view before the electorate. ". . . [S]tatutes [relating to elections] should be liberally construed in favor of citizens whose right to vote they tend to restrict . . ." 25 Am.Jur.2d Elections, Sec. 5, p. 695.

I would make the writ absolute.