STATE of Missouri ex rel. Patrick
BURKE, Relator,
v.
Honorable Robert Lee CAMPBELL, Judge, Circuit Court, St. Louis County, Missouri, and F. William Human, Jr., Chairman, Marjorie Pharis, Ellie James and Jerome Mandelstamm, Being the Board of Election Commissioners, St. Louis County, Missouri, Respondents,
and

John L. Lawler, Jr.,
Intervenor-Respondent.

No. 38361.

Missouri Court of Appeals,
St. Louis District,
Division One.

Sept. 28, 1976.

Carroll J. Donohue, Husch, Eppenberger, Donohue, Elson & Cornfield, St. Louis, for relator.

Eugene P. Walsh, Walsh, Howe & Ebert, Clayton, for intervenor-respondent.

Norman C. Parker, St. Louis, for respondents.

RENDLEN, Judge.

This is an original proceeding in prohibition. Relator, a candidate for the Democrat nomination for State Representative from the Fifty-Fourth Missouri District, first petitioned the Circuit Court of St. Louis County for prohibition, seeking to prevent the St. Louis County Board of Election Commissioners from placing, or to require them to remove the name of intervenor[1] John L. Lawler, Jr., from the Democrat ballot as a candidate for State Representative in the primary election scheduled for August 3, 1976. Relator claimed Lawler had not been a qualified voter for two years next before the date of the primary election and was therefore unqualified for the office. The petition further alleged that respondent Board of Election Commissioners had proceeded with the preparation of the ballots bearing the name of Lawler as a candidate and intended to present the ballot for usage at that election, all "in excess of . . . and . . . beyond their jurisdiction . . . in violation of the requirements of Article III, Section 4, Constitution of 1945, and Section 21.080 RSMo. . . . " The Honorable Robert Lee Campbell, Judge of the Circuit Court and one of the respondents here, denied relief concluding Lawler had been a "qualified voter" for two years prior to the August 1976 primary election within the meaning of the cited constitutional and statutory sections, because he had been a qualified voter either in Tulsa, Oklahoma, or St. Louis County, Missouri, during that period.

Relator now petitions this court for prohibition seeking: (1) to prevent respondent Campbell from "continuing and persisting in his denial of a preliminary writ of prohi-

bition"; or (2) to compel respondent Campbell to issue the preliminary writ of prohibition requested July 12, 1976; or (3) to directly prohibit respondent Board of Election Commissioners from placing intervenor Lawler's name on the ballot.

The material facts regarding the candidate's residence, registration and voting experience during the past three years are undisputed. Lawler had been a resident of the City of St. Louis prior to August 1973 when he found employment and moved to Tulsa, Oklahoma, but maintained his St. Louis home until January 1974. He cancelled his voter registration in the City of St. Louis in August 1974 then registered and voted in the Oklahoma primary and general elections during the fall of that year. Returning to Missouri in December 1974, he established his residence in the Fifty-fourth Representative District in April 1975, failing however to register as a voter in the county until February 1976, some ten months after making Missouri his home.

On July 27, 1976, this court issued its alternative writ of prohibition directing respondent Board of Election Commissioners to refrain from placing the name of John L. Lawler, Jr., on the Democratic ballot as a candidate for such office in the August primary election. For reasons we shall discuss, following hearings on July 30, 1976, the alternative writ was made absolute.

■ It is settled that prohibition will lie to prevent Boards of Election Commissioners from placing the names or printing primary ballots bearing the names of candidates seeking office who fail to meet statutory requirements for such office. *State ex rel. Gralike v. Walsh*, 483 S.W.2d 70, 74[3] (Mo.banc 1972). Further it is clear that our orders may go directly to the actions of the Board.

The question here is whether intervenor Lawler qualifies as a candidate for the office of State Representative under the pro-

1. John L. Lawler, Jr., on oral motion intervened in the Circuit Court action and without objec-

tion continued in that status in the proceedings here.

visions of Section 21.080 [2] and Article III, Section 4 of the Missouri Constitution, which in pertinent part is as follows:

"*Qualifications of representatives*

Section 4. *Each representative shall* be twenty-four years of age, and *next before the day of his election shall have been a qualified voter for two years* and a resident of the county or district which he is chosen to represent for one year, . . . " (Emphasis ours.)

The statutory qualifications for voters in the Fifty-fourth Representative District, which lies wholly in St. Louis County, are found in Chapter 113, RSMo. 1969, V.A.M.S. Section 113.010 requires that in counties having "more than seven hundred thousand inhabitants, [St. Louis County] there shall be a registration of all qualified voters and the conduct of primary, general and special elections, . . . held in such counties, shall be governed by the provisions of sections 113.010 to 113.420 . . . " Section 113.340 provides that "[t]he vote of no one shall be received by the judges whose name does not appear upon the registry as a qualified voter." In 1973 this voter registration requirement was extended statewide by Section 114.016(1) which mandates: "*No person shall be permitted to vote* in any election *unless he is duly registered* and unless his name thereby appears in both the county record and the precinct record for the county and precinct in which he resides." (Emphasis ours.) The Missouri Supreme Court in *State ex rel. Socialist Workers' Party of Missouri v. Kirkpatrick*, 513 S.W.2d 346, 347 (Mo.banc 1974), commenting on this section, noted that a very limited exception appears in Sections 113.031 and 111.041 which provide a method whereby unregistered persons who have resided in this state for more than thirty days and less than one year may vote for presidential electors but for no other officers. This special exception does not affect our interpretation of Article III, Section 4.

The phrase "qualified voter," which appears in several constitutional and statutory provisions, was given early judicial consideration in *State ex rel. Woodson v. Brassfield*, 67 Mo. 331, 337 (1878), in which the Supreme Court construed the phrase as it appeared in Article XI, Section 14 of the 1865 Missouri Constitution. That section, provided no town was authorized to become a stockholder in any corporation unless by election, two-thirds of the *qualified voters* of such town approved the action. The court there held that one not registered, though otherwise qualified would not be considered a qualified voter, stating:

"While the registration law was in force, they only were qualified voters whose names were placed on the registration books. This was the final, qualifying act, and no matter if a citizen possessed every other qualification, if not registered, he was not a qualified voter. It was not the right to register which constituted one a qualified voter, but the fact being registered as such, was also essential. A qualified voter is one who by law, at an election, is entitled to vote. If, by the law, a person was not entitled to vote, whether in consequence of a disability which deprived him of the right to register, or of his neglect to register with a perfect right to do so, he was equally disqualified."

Similarly the court in *State ex rel. Socialist Workers' Party of Missouri v. Kirkpatrick*, supra at 346–7[1], interpreting the phrase "qualified voter" as used in Section 120.-160(3) for purposes of deciding if a candidate's nominating petition contains sufficient lawful signatures, stated:

"While there have been cases holding both ways on the question here presented it is our view that the better reasoned cases are those that rule that a 'qualified voter' is one that, in addition to other qualifications, must be registered where such is required as a condition for voting."

2. All statutory sections cited are RSMo. 1969, V.A.M.S., unless otherwise noted. All constitu-

tional provisions are Missouri Constitution 1945, as amended.

The court then favorably cited 29 C.J.S. Elections § 1(8), p. 23, as follows:

" 'A "qualified voter" is one having the constitutional qualifications for the privilege, who is duly registered pursuant to law, and has the present right to vote at the election being held.' "

In *Scott v. Kirkpatrick*, 513 S.W.2d 442, 444 (Mo.banc 1974), our Supreme Court interpreted the phrase "qualified voter" appearing in Section 126.151 as making registration a prerequisite for signers of initiative petitions.

■ Guided by these cases and considering related constitutional and statutory provisions bearing on the section involved here, we construe the phrase "qualified voter" in Article III, Section 4, to mean one who appearing at a proper polling place may receive and cast a ballot in any regular or special election. If we accept intervenor's position that one may be a qualified voter although not registered to vote and carry the argument to its logical conclusion, such would permit a person to present himself as qualified to represent a district in the General Assembly though not qualified to vote in local elections. We do not believe the framers of Article III, Section 4, intended that one not qualified to vote in his own election [3] might serve as State Representative and no such strained construction will be placed on this provision.

Concerning Lawler's time in Tulsa, we do not reach nor decide if the period when he qualified as a registered Oklahoma voter [4] can be added to the subsequent period of Missouri residency to meet the two-year voter qualification requirement, since during the ten months of April 1975 through February 1976, Lawler though resident in the district was not qualified to vote. It

may be properly stated he was qualified to *register* during that period, but was not a "qualified voter" in the sense that expression is used in Article III, Section 4 of the Missouri Constitution.

■ Intervenor also challenges the two-year "qualified voter" requirement as a violation of the Equal Protection Clause of the Fourteenth Amendment. It should be noted that the court in *Gralike, supra* at 76[4], held the residency requirement of one year in the district for *State Senatorial* candidates did not violate the Equal Protection Clause. We find the reasoning of *Gralike*, that a state may establish and enforce reasonable requirements for officeholders, compelling and rule against intervenor on this point.

Finally we are not unaware of the court's admonition in *Gralike, supra* at 76[5], that challenges to the eligibility of a candidate should be made at the earliest opportunity. However, during argument it was conceded by counsel for the Board that although inconvenience and added expense would result from the change, there was sufficient time and available personnel to prepare the ballot without intervenor's name and permit the election to proceed as scheduled.

For the reasons stated herein, the alternative writ was made absolute July 30, 1976, prohibiting respondent Board of Election Commissioners of St. Louis County from placing the name of John L. Lawler, Jr., on the ballot as a candidate for nomination for the Missouri House of Representatives, Fifty-fourth District, at the primary election of August 3, 1976.

WEIER, P. J., concurs.

McMILLIAN, J., concurs in results only in separate opinion and dissents in part.

---

3. Intervenor emphasizes that he registered in February, 1976, thus qualifying to vote in this year's elections, but is forced to argue that he was qualified to vote even during the period prior to February 1976 when not registered.

4. Intervenor it appears was not a qualified voter under Oklahoma law after he moved his residence and became a citizen of Missouri in either December 1974 when he came to the

State or in April 1975 when he purchased his home and declared his residence as St. Louis County. Article III, Section 1 of the Oklahoma Constitution provides that: "Qualified electors of this state shall be . . . *citizens of the state* . . ." (Emphasis ours.) When Lawler left Oklahoma and made Missouri his home, he was no longer a "qualified elector" of Oklahoma.

McMILLIAN, Judge (concurs in results only and dissents in part.)

I concur in the result reached by the majority and with those portions of the opinion which establish prohibition as the proper remedy. I agree with the majority conclusion that Intervenor Lawler is not a qualified candidate for State Representative only because Lawler failed to show that he had been a resident of Missouri for the requisite two-year period "next before the day of his election" in November, 1976. See State ex rel. *King v. Walsh*, 484 S.W.2d 641, 644–46 (Mo.banc 1972) for a discussion of residency. However, I respectfully dissent from the conclusion held by the majority that one must be a registered voter to be a qualified candidate under Art. III, § 4,[1] and on the equal protection aspects of the case.

The right to hold public office is one of the valuable rights of citizenship. *Turner v. Fouche*, 396 U.S. 346, 362–63, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970) and *Preisler v. City of St. Louis*, 322 S.W.2d 748, 753 (Mo. 1959). It is a basic and universally accepted rule that statutory and constitutional provisions which tend to limit the exercise of this right or exclude any citizen from participation in the election process must be strictly construed in favor of the right of voters to exercise their choice. These rights should not be declared prohibited or curtailed except by plain provisions of the law. Ambiguities are to be resolved in favor of eligibility to office. 67 CJS Officers § 11 (1950); accord, *Application of Lawrence*, 353 Mo. 1028, 185 S.W.2d 818, 820 (Mo.1941), and *Chomeau v. Roth*, 230 Mo.App. 709, 72 S.W.2d 997, 999 (1934) and see *State ex rel.*

*Socialist Workers' Party of Missouri v. Kirkpatrick*, 513 S.W.2d 346, 351 (Mo.banc 1974) (dissenting opinion). By engrafting a registration requirement on Art. III, § 4, the majority adds an unwarranted restriction on the right to hold public office not clearly required by our constitution. As an equally compelling argument can be made that registration is not required to make a candidate a "qualified voter," we should not construe the constitution in such a way as to further restrict eligibility to office.

In my view, it is reasonable to conclude that "qualified voter" as contemplated by Art. III, § 4, means those substantive qualifications possessed by a citizen, as measured by the constitution,[2] which entitle him to be a voter; that is, one who has met the durational residency, citizenship, age and mental competency requirements, and who has not been convicted of a felony or crime connected with the right of suffrage. It is also reasonable to conclude that these qualifications are recognized as existing distinct from the right to vote, in that the existence of these substantive qualifications must be evidenced by registration before a citizen is permitted to exercise his right as a voter. Under our constitution, failure to register does not appear to destroy a citizen's status as a qualified voter for all purposes, the only legal effect is to deprive him of a vote in an election for which registration is required. Registration is a police regulation governing what a citizen must do in order to vote in an election. ". . . The primary purpose of registration laws is to prevent fraudulent abuse of the franchise, by providing in advance of elections an authen-

1. All constitutional provisions cited are Missouri Constitution 1945, as amended, unless otherwise noted.

2. Art. 8, § 2, entitled "Qualifications of voters —disqualifications" as amended in 1974 provides: "All citizens of the United States, including occupants of soldiers' and sailors' homes, over the age of eighteen who are residents of this state and of the political subdivision in which they offer to vote are entitled to vote at all elections by the people, if the election is one for which registration is required if they are registered within the time prescribed by law, or if the election is one for which registration is not required, if they have been residents of the political subdivision in which they offer to vote for 30 days next preceding the election for which they offer to vote: *Provided however,* no person who has a guardian of his or her estate or person by reason of mental incapacity, appointed by a court of competent jurisdiction and no person who is involuntarily confined in a mental institution pursuant to an adjudication of a court of competent jurisdiction shall be entitled to vote, and persons convicted of felony, or crime connected with the exercise of the right of suffrage may be excluded by law from voting."

tic list of the qualified voters." *State ex rel. Hay v. Flynn,* 235 Mo.App. 1003, 147 S.W.2d 210, 211 (1941) and *Dysart v. City of St. Louis,* 321 Mo. 514, 11 S.W.2d 1045, 1050 (Banc 1928). "The purpose of registration statutes is to protect the purity of the ballot box by ascertaining before the vote is cast whether such person possesses the qualifications to vote, and by preventing impersonation thereafter at the polls." 25 Am. Jur.2d, Elections § 95.

Our Supreme Court early held that registration laws do not impose an additional qualification on the right of suffrage, noting that, ". . . [t]he power to provide for the orderly exercise of the right of suffrage . . . includes the power to enact registry laws, and to prohibit from voting persons not registered. It is now generally admitted that these laws do not add to the constitutional qualifications of voters . . ." *State ex rel. McCaffery v. Mason,* 155 Mo. 486, 55 S.W. 636, 642 (1900). *Mason v. State of Missouri,* 179 U.S. 328, 21 S.Ct. 125, 45 L.Ed. 214.

Voter registration has had a checkered history in Missouri. Under the 1865 Missouri Constitution, universal voter registration was required. This provision was deleted from the 1875 Constitution and replaced with a provision directing the General Assembly to provide for registration of voters in areas having a certain population, but not otherwise. Under the 1945 Constitution, currently in force, registration of voters is authorized by Art. VIII, § 5, which provides "Registration of voters *may* be provided for by law." (Emphasis added.) Currently, universal registration is required by statute, § 114.016(1), Laws 1973. Prior to 1973, registration was not required in many areas of the state.

Given the history and purpose of registration laws in this state, it is probable that the framers of the 1945 Constitution and the people adopting it did not intend that "qualified voter" mean registered voter in the context of defining eligibility to, or qualifications for, office. Such interests as preventing fraud at the ballot box are not relevant in determining a candidate's quali-

fications for office. Further, it is not reasonable to assume that it was intended that the right to run for public office should depend on what the legislature chooses, from time to time, to do about voter registration.

The majority has not cited one case involving eligibility to office or qualifications to hold office where it was held that registration was necessary to make the candidate or person elected a qualified voter. On the other hand, my research has revealed at least three other jurisdictions with similar constitutional and statutory provisions holding that in such cases registration is not required to make one a qualified voter. *Meffert v. Brown,* 132 Ky. 201, 116 S.W. 779, 780 (1909); *Gilbert v. Breithaupt,* 60 Nev. 162, 104 P.2d 183 (1940); *Trammell v. Griffin,* 141 Tenn. 139, 207 S.W. 726 (1918) and 128 A.L.R. 1111.

Further, the cases cited by the majority do not require such a construction. These cases concern the definition of "qualified voter" or "legal voter" as used in the context of voting in an election, *State ex rel. Woodson v. Brassfield,* 67 Mo. 331 (1878), or voter participation in a species of election. *State ex rel. Social Workers' Party of Missouri v. Kirkpatrick,* 513 S.W.2d 346 (Mo. banc 1974) (nominating petitions) and *Scott v. Kirkpatrick,* 513 S.W.2d 442 (Mo.banc 1974) (initiative petitions). In such circumstances, it is apparent that the purpose of registration laws in preventing voter fraud is relevant, and reasonable to assume that the framers and the legislature intended that registration was a required "qualification." The court in *Socialist Workers' Party,* supra, relied heavily on the notion that registration was required to sign nominating petitions in order to protect against fraud. The *Scott v. Kirkpatrick* decision defined "qualified voter" in the narrow context of a statute which required that a signer of an initiative petition be a "qualified voter" who at the time it is presented to him is legally entitled to vote on the measure it proposes. The court concluded that a qualified voter legally entitled to vote was a registered voter. However, nei-

ther decision indicated that such must be the meaning of qualified voter in other contexts. It must also be noted that *Brassfield,* on which the majority places its principal reliance, concerned a construction of a provision of the 1865 Constitution under which uniform voter registration was clearly required by the constitution, not by statute, as in the instant case. Further, the quoted portions of that case failed to receive a majority vote of the court.

The majority opinion in this case operates to limit the right to public office. They have added registration requirements upon a constitutional provision that does not deal with voting at all, but pertains exclusively to defining eligibility to, or qualifications for, the office of State Representative. The constitution does not clearly require such a construction. It must be presumed that the writers of our constitution were literate and intelligent men and women. If, by the expression, "qualified voter," the framers had intended registration to be required, they could have so stated.

I must also express some reservations as to the equal protection aspects of this case. As I understand Intervenor Lawler's contention, he argues that if voter registration is a required qualification for the office of State Representative, he has been denied the equal protection of the laws as guaranteed by the Fourteenth Amendment to the Federal Constitution in that the Missouri Constitution does not impose such requirements for certain other state offices, i. e., governor, lieutenant governor, and state auditor. Lawler argues that two classes of persons have been created and that he, and other persons so situated, have been invidiously discriminated against without reasonable justification by the registration requirement. This contention raises serious problems which do not need to be decided here in view of my initial conclusion that Intervenor Lawler has failed to meet the two-year Missouri residency requirement. However, it must be noted that at least one state Supreme Court has found a constitutional violation under similar circumstances.

*Gangemi v. Rosengard,* 44 N.J. 166, 207 A.2d 665 (1965).

For reasons given herein, writ should be made absolute.