**STATE of Missouri, Respondent,**

v.

**Warren FRAZIER, Appellant.**

**No. KCD 28455.**

Missouri Court of Appeals,
Kansas City District.

April 4, 1977.

Motion for Rehearing and/or Transfer
Denied May 2, 1977.

Thomas M. Larson, Public Defender, Lee M. Nation, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., W. Mitchell Elliott, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P. J., and SOMERVILLE and TURNAGE, JJ.

SOMERVILLE, Judge.

Defendant was indicted for first degree murder (one David L. Holiway being the victim), tried before a jury, found guilty, and sentenced to life imprisonment.

Two instances of alleged trial error are raised by defendant on appeal: (1) permitting defendant's ex-wife, Denise Frazier, to testify as to defendant's complicity in a criminal offense (shooting into a dwelling house, Section 562.070, RSMo 1969) committed during coverture over defendant's objection that such violated the "interspousal privilege", constituted proof of a separate and distinct crime wholly unrelated to the one for which defendant was being tried, and was irrelevant; and (2) admitting State's Exhibits 1, 11, 12, and 13, photographs of the victim, over defendant's objection that they were "irrelevant to any issue at trial and were offered for the sole purpose of inflaming the passions and prejudices of the jury."

Defendant has not challenged the sufficiency of the evidence to sustain his conviction. An account of the homicide, in substance, reveals that on the evening of March 12, 1975, the Holiway brothers, Michael, David (the victim) and Paul, were the occupants of an automobile traveling on 44th Street in Kansas City, Missouri, near the intersection of 44th Street and Indiana Street. Michael was driving, David was sitting in the front seat on the passenger side, and Paul was sitting in the rear seat. After crossing Indiana Street a Thunderbird automobile in front of the Holiway vehicle pulled to the right and stopped. Michael stopped his automobile alongside the Thunderbird. The defendant was identified as the driver of the Thunderbird. Two other males were in the Thunderbird. The driver of the Thunderbird, defendant, had a gun in his hand. No other weapons were observed.

A conversation ensued between the occupants of the two automobiles and shortly thereafter a volley of shots was fired from the Thunderbird at the Holiway brothers. Defendant was the only occupant of the Thunderbird actually seen brandishing a weapon (a handgun) and firing at the Holiway brothers, although the number of shots that were fired indicated that more than one weapon was involved. A bullet struck Michael and he fell out of his vehicle on the driver's side. Michael's wound was not fatal. Four bullets struck David (the victim) and he fell out of the vehicle on the passenger's side. Paul escaped unscathed.

A forensic pathologist, who performed an autopsy on the body of the victim, testified that multiple entrance gunshot wounds were observed. State's Exhibit 1 (earlier identified as a picture of David Holiway taken at the scene following the fatal shooting), 11, 12 and 13 were identified as depicting the person on whom the autopsy was performed. The pathologist also identified State's Exhibit 11 as depicting an entrance gunshot wound in the area of the victim's left knee, State's Exhibit 12 as depicting an entrance gunshot wound in the area of the victim's left shoulder, and State's Exhibit 13 as depicting an entrance gunshot wound in the area of the victim's back. The pathologist further testified that three slugs were removed from the victim's body, one from the area of the left knee, one from the area of the left chest, and one from the right lung. According to the pathologist, the slug removed from the victim's right lung was the cause of death. The pathologist delivered the three slugs removed from the victim's body to a member of the Kansas City, Missouri, police department, who in turn delivered them to a ballistic expert.

Digressing momentarily, Denise Frazier, ex-wife of the defendant, who appeared as a witness for the state,[1] testified that on July 25, 1974, while separated from defendant but prior to their divorce, she was living in a residence at 6121 Swope Parkway which belonged to a friend of her mother. At approximately 1:30 in the morning, while sitting on the front porch, she observed a car belonging to a friend of her estranged husband drive up. She went inside the residence and locked the door. After doing so she observed defendant alight from the passenger side of the car, come upon the front porch, and knock at the

1. Defendant makes no claim that his ex-wife was compelled to testify against him; it is implied that she was a willing witness against him.

front door. Seconds later, when no one responded to defendant's knock, four shots were fired through the front door. She did not actually see defendant fire the shots. She called the police after she heard the car drive away. A police officer, during the course of investigating the incident, removed four .38 caliber slugs, which had entered via the front door, from a wall in the residence.

The ballistics expert heretofore referred to testified that the slugs removed from the victim's right lung and left shoulder were fired from a .38 caliber revolver and the slug removed from his left knee was fired from a 9 millimeter, semi-automatic pistol. The ballistic expert further testified that the four .38 caliber slugs removed from the wall of the residence at 6121 Swope Parkway and the two .38 caliber slugs removed from the victim's body were fired from the same weapon.

Defendant took the stand, denied any involvement in the homicide, and offered nine alibi witnesses.

Section 546.260, RSMo 1969, addresses itself to the "interspousal privilege" aspect of defendant's first point. For all practical intents and purposes it has remained intact as originally enacted in 1879 (Section 1918, Ch. 24, RSMo 1879). Section 546.260, supra, reads: "No person shall be incompetent to testify as a witness in any criminal cause or prosecution by reason of being the person on trial or examination, or by reason of being the husband or wife of the accused, but any such facts may be shown for the purpose of affecting the credibility of such witness; provided, that no person on trial or examination, nor wife or husband of such person, shall be required to testify, but any such person may, at the option of the defendant, testify in his behalf, or on behalf of a codefendant, and shall be liable to cross-examination, as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case; provided, that in no case shall husband or wife, when testifying under the provisions of this section for a defendant, be permitted to disclose confidential communications had or made between them in the relation of such husband and wife."

The case history construing this statute evidences a metamorphosis rare in the annals of statutory law. As a proem, the common law rule was that a husband and wife could not testify for or against each other in any legal proceeding in which the other was a party, except in the prosecution of one for criminal injury to the other. *State v. Willis*, 119 Mo. 485, 24 S.W. 1008 (1894); and *State v. Kodat*, 158 Mo. 125, 59 S.W. 73 (1900). What is now Section 546.260, supra, was originally enacted to relieve certain fixed, common law disabilities attached to spousal testimony, but not to create new disabilities. *State v. Kollenborn*, 304 S.W.2d 855, 861 (Mo. banc 1957).

Early cases construing this statute focused upon the statutory language "at the option of the defendant". *State v. Willis*, supra, and *State v. Kodat*, supra, are illustrative of the view taken by the early cases. In *Willis*, the defendant was charged with uttering a forged instrument. The gist of the charge was that defendant had forged his wife's name to a promissory note. Defendant's wife, over his objection, was permitted to testify on behalf of the state that she did not sign the note in question. In reversing and remanding the court held, 24 S.W. l.c. 1009, that "both at common law and under the statute the wife of defendant was clearly incompetent as a witness on the trial of this cause, unless called by the husband, and that the court committed error in permitting her to testify against him, over his objections." In *Kodat*, the defendant was charged with assault with intent to kill a Mrs. Josephine Kretsch who was visiting defendant's wife when defendant appeared and provoked an argument with his wife. Defendant left, then returned with a pistol and, when his wife and Mrs. Kretsch started to flee, he fired the pistol and a bullet passed through Mrs. Kretsch's dress. Mrs. Kodat, who was divorced from defendant at the time of trial, was permitted to testify against defendant over his objection.

In reversing and remanding the court held, 59 S.W. l.c. 74, that spouses "may testify for each other in criminal prosecutions, except as to confidential communications, but not against each other . . . " and at l.c. 75 that such rule prevailed even though defendant and the witness were divorced at the time of trial. See also *State v. Wooley*, 215 Mo. 620, 684, 115 S.W. 417, 438 (1908), where the court broadly stated "that under the law the wife is not a competent witness against her husband in a criminal case, and, had she been introduced as a witness to testify against her husband, her testimony would have been clearly inadmissible."

*State v. Dunbar*, 360 Mo. 788, 230 S.W.2d 845 (1950), is illustrative of the next metamorphic stage of the statute. In *Dunbar*, the defendant was charged with felonious assault with malice upon his wife. During the trial the wife was called as a witness by the state. Preliminary questioning by defense counsel revealed that she did not desire to testify against her husband and that she appeared as a witness solely because she had been subpoenaed. Notwithstanding her reluctance to testify against her husband, and over his objection, the trial court compelled the wife to testify. On appeal, the case was reversed and remanded. In doing so, the court held, l.c. 847: "Under the statute, we must reluctantly hold that, while Mrs. Dunbar was *competent* to testify in this case, she could not legally be *required* to do so. One synonym for 'require' is 'compel' and that is the sense in which the term 'required' is used in the statute." The court went on, however, and stated, l.c. 847: "The first part of Section 4081 makes either spouse *competent* to testify in *any* criminal case, in which the other spouse is a defendant, but the proviso says that neither spouse shall be *required* to testify, which must also refer to *any* criminal case, including a prosecution of one spouse for criminal

injury to the other. That portion of the statute which reads 'but any such person may, at the option of the defendant, testify in his behalf,' has no bearing on the instant case and seems to be an unnecessary provision. The preceding portion of the statute makes one spouse a competent, but not compellable, witness in any criminal charge against the other spouse; that is, he or she may, at his or her own option, testify as a witness for the State. Then the statute, in effect, goes on to say that such spouse may, at the option of the defendant, testify as a defense witness. Of course, any defendant has the option to determine what witnesses shall be summoned on behalf of the defense." *Dunbar* obviously emphasized a different portion of the statute than that emphasized in the earlier case. *Dunbar*, albeit by way of dictum, construed the statute to permit, but not to compel, a spouse to testify against the other spouse in any criminal case, as well as permitting a spouse to testify on behalf of the other spouse at the latter's option.

*State v. Kollenborn*, 304 S.W.2d 855 (Mo. banc 1957), is illustrative of the next succeeding metamorphic stage of the statute. In *Kollenborn*, the defendant was charged with mistreating his infant son (Section 559.340, RSMo 1949). Betty Kollenborn, although divorced from the defendant at the time of the trial,[1] was the mother of the infant and the wife of defendant at the time the offense occurred. She voluntarily appeared and testified on behalf of the state. The defendant's conviction was affirmed on appeal. The court, l.c. 862, took note of the dictum in *State v. Dunbar*, supra, with the following observation: "[I]t further indicated (as we understand the opinion) that our statute (then § 4081, RSMo 1939) means: (1) that in no event may one spouse be *required* to testify

1. In *Kollenborn*, the court, l.c. 864, expressly stated that it was not basing its decision upon the fact that Betty Kollenborn was divorced from the defendant at the time of trial: "We do not base this decision upon the fact that Betty Kollenborn had been divorced from the defendant prior to the time of trial. It has been stated that her marital status at the time of trial should control. *State v. Dunbar*, 360 Mo. 788, 230 S.W.2d 845, 848. The contrary has also been asserted. *State v. Kodat*, 158 Mo. 125, 59 S.W. 73. There is a conflict on that subject generally. Vol. 3, Wharton's Criminal Evidence, 12th Ed., § 772, pp. 109, 110; 8 Wigmore on Evidence, 3rd Ed., § 2237, pp. 247–250."

against the other; but (2) that in any criminal case he or she *may* testify voluntarily against the other, if he or she so chooses. In so far as clause (2) is concerned, that question was not directly involved there on the facts, and we need not go so far here in our construction of the statute." The rationale employed by the court in *Kollenborn* in affirming the conviction is best explained by quoting at some length from the opinion (l.c. 864): "We are much inclined to the view stated by Mr. Wigmore (8 Wigmore on Evidence, § 2239, p. 258) that: 'By a liberal view *any injury to a spouse's child* is a wrong to the spouse, and his or her testimony becomes admissible against the other.' *However, we need not go so far here.* The offense presently charged was a crime against the person of an infant less than 5 months of age; there is at least a fair inference that no one was present except the defendant, the wife, and the child. We now hold that the wife, testifying voluntarily, is a competent witness against her husband in a prosecution for acts constituting a crime of personal violence against her child. The exact scope of the common law exception has been somewhat nebulous and confused; we need not attempt at this time to define further its precise limits and boundaries. The present offense can well be classed as one against the marital status, within the authorities using that test as a guide. We hold that every reason of public policy and true necessity which permits the wife to so testify in the event of a personal injury to herself, applies equally here. The modern tendency is to relax the old rules of incompetency of witnesses, generally. *Funk v. United States*, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369. This tendency is exemplified in many of the modern statutes. It is, in our opinion, contrary to all principles of morality and justice to close the mouth of the only witness in such a case as the present. What is not good sense should not be the law." (Second emphasis added.) Despite the court's earlier disclaimer in *Kollenborn* that it was not adopting the dictum contained in *State v. Dunbar*, supra, it appears to have done so, at least in a limited sense, because it refused to pigeonhole the facts before it into the common law exception that permitted one spouse to testify against the other in the prosecution of one for criminal injury to the other (on the theory that an injury to the child of a spouse was a wrong to the spouse), and specifically held, l.c. 864, that "[t]o the extent indicated in this opinion, the broad statements in certain cases to the effect that in no event may a wife testify against her husband in a criminal case, or testify without his consent, should no longer be followed."

*State v. Damico*, 513 S.W.2d 351 (Mo. 1974), illustrates the completion of the statute's metamorphosis. In *Damico*, the defendant was charged and convicted of murder in the first degree. His ex-wife appeared as a witness for the state and testified that before and while she was married to the defendant they had frequently crawfished and picnicked in the area where the victim's (unrelated to either defendant or his ex-wife) body was discovered. In affirming the conviction on appeal, Division No. 2 of the Supreme Court, l.c. 361, held: "The court did not err in admitting this testimony. The objections that she was an improper or incompetent witness are not well taken. While at common law a wife was incompetent to testify against her husband that complete legal disqualification was removed by the enactment of the statute, now § 546.260, RSMo 1969, V.A.M.S., which states in plain language: 'No person shall be incompetent to testify as a witness in any criminal cause or prosecution by reason of being * * * the husband or wife of the accused, * * *.' As stated in *State v. Kollenborn, supra,* the broad statement in *State v. Kodat, supra,* and other cases indicating that in no event may a wife testify against her husband in a criminal case, is no longer to be followed. If we indulge in an assumption that counsel's objection was intended to block Margaret Brett's testimony on the ground of privileged communications between husband and wife, that objection would likewise have been untenable. In order to make a communication between husband and wife

privileged it must be *confidential* in its nature, and where not intended to be confidential, it is not privileged. 58 Am.Jur. Witnesses, § 380, p. 222. 'Where husband and wife are competent as witnesses for or against each other, either of them may testify to any fact the knowledge of which was acquired by them independently of their marriage relation, and not by reason of the confidence growing out of the marriage relation. It is immaterial that the knowledge was derived during the existence of that relation and pertains to the transactions of the one or the other.' 58 Am.Jur.Witnesses § 384, p. 225. Appellant's going picnicking and crawfishing with the witness in the area of Wild Horse Creek Road did not constitute a privileged confidential communication, made to her by reason of the confidential relationship of marriage, but was a fact ascertained by her independently of the marriage relationship. Furthermore, according to Margaret Brett, appellant's *first* trips into the area occurred *prior* to the marriage. It follows that appellant's knowledge of the area, gleaned during these premarital trips, which in and of themselves were sufficient to apprise him of its lonely and secluded character, could not possibly be counted upon as privileged confidential communications between husband and wife. The testimony with reference to subsequent trips, after marriage, was cumulative merely. We are not deciding this point on the basis that the marital relationship had been dissolved by divorce and therefore Margaret Brett was free to testify against appellant. We are deciding it on the basis that Margaret Brett obtained knowledge of the fact that appellant was fully acquainted with this territory by general observation independently of the marriage—not by reason of any confidential communication growing out of that relation." It should be noted that *Damico* and *State v. Kollenborn, supra,* at 859, continue to recognize the sanctity of confidential communications between spouses, thus precluding their admissibility.

If this court's analysis of the metamorphosis undergone by the statute is correct, the holding in *Damico*, with respect to

permitting a spouse to testify against the other spouse in a criminal proceeding, warrants the following conclusion: A spouse is now a competent witness against a defendant spouse in any criminal proceeding if the witness spouse willingly testifies; the option of doing so belongs to the witness spouse; and a witness spouse is permitted, but may not be compelled, to testify in any criminal proceeding against a defendant spouse as to any relevant and admissible matter save confidential communications between the spouses. As the matters testified to by defendant's ex-wife in the instant case did not, by any stretch of the imagination, relate to or spring from a confidential communication, the "interspousal immunity" argument tendered by defendant is without merit.

The second aspect of defendant's first point is that the testimony of his ex-wife impermissibly constituted evidence of a separate and distinct crime. The governing rules dispositive of this issue have been stated many times, most comprehensively perhaps in *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304, 307 (banc 1954): Proof of a separate and distinct crime is generally not admissible; exceptions to this general rule of exclusion are as well established as the rule itself; evidence of another crime is admissible to prove the specific crime charged if the former tends to establish (1) motive, or (2) intent, or (3) the absence of mistake or accident, or (4) a common scheme or plan embracing the commission of multiple crimes so related to each other that proof of one tends to establish proof of the other, or (5) the identity of the person charged with the commission of the crime on trial; the acid test for determining whether proof of a separate and distinct crime falls within one or more of the enumerated exceptions is its logical relevancy to a particular exception and its tendency to prove a material fact in issue; existence of the requisite degree of relevancy is a judicial question; and, finally, if the requisite degree of relevancy between proof of a separate and distinct offense and the crime charged and being tried cannot be clearly

perceived, the accused should be given the benefit of the doubt, and such proof or evidence should be rejected.

■ This court concludes that the requisite degree of relevancy can clearly be perceived between the testimony of defendant's ex-wife as to the separate and distinct offense complained of and the homicide for which defendant was being tried because the former tended to prove defendant's access to one of the handguns employed to slay the victim and his identity as one of the perpetrators of the homicide. See: *State v. Griffin*, 336 S.W.2d 364, 367 (Mo. 1960); *State v. Richetti*, 342 Mo. 1015, 119 S.W.2d 330, 337–40 (1938); and *State v. McKeever*, 339 Mo. 1066, 101 S.W.2d 22, 28–29 (1936).

■ A claim that the ex-wife's testimony was "irrelevant" is the remaining facet of defendant's first point. As garnered from the argument portion of defendant's brief, its true complexion is that his ex-wife's testimony was insufficient to identify him as the person who fired the shots into the dwelling house at 6121 Swope Parkway. This contention can be readily answered without citation to authority. By way of brief recapitulation, defendant's ex-wife testified: (1) that she saw defendant walk up onto the front porch of the dwelling where she was staying; (2) after she entered the dwelling she pulled back the curtain and saw him knocking at the front door; and (3) seconds later shots were fired through the front door. From this evidence, the jury could reasonably infer that defendant did the shooting.

■ Defendant's final point charges the trial court with error for having admitted certain post-mortem pictures of the victim—one being a picture taken of the victim at the scene of the homicide and three being pictures taken from different angles during the course of the autopsy showing the various entrance gunshot wounds. The fact that such pictures are gruesome and shock provoking, thereby giving them a prejudicial and inflammatory aura, does not in and of itself preclude their admission if they are otherwise relevant and possessed of probative value. *State v. Jones*, 515 S.W.2d 504, 506 (Mo.1974); *State v. Parsons*, 513 S.W.2d 430, 439 (Mo.1974); *State v. Clark*, 494 S.W.2d 26, 30 (Mo. banc 1973); *State v. Crow*, 486 S.W.2d 248, 256 (Mo.1972); *State v. Stevens*, 467 S.W.2d 10, 24 (Mo.1971); and *State v. Moore*, 303 S.W.2d 60, 66 (Mo. banc 1957). Pictures of this nature have been found to be infused with probative value for a wide variety of reasons. They are deemed to have probative value if they show the nature and location of wounds inflicted upon a deceased. *State v. Jones, supra*, at 506; *State v. Wallace*, 504 S.W.2d 67, 72 (Mo.1973), *cert. denied*, 419 U.S. 847, 95 S.Ct. 84, 42 L.Ed.2d 76 (1975); *State v. Jackson*, 499 S.W.2d 467, 471–72 (Mo.1973); *State v. Whiteaker*, 499 S.W.2d 412, 418 (Mo.1973), *cert. denied*, 415 U.S. 949, 94 S.Ct. 1472, 39 L.Ed.2d 565 (1974); *State v. Stevens, supra*, at 24; and *State v. Moore, supra*, at 65–66. They possess probative value if they enable the jury to better understand the facts elicited from various state witnesses, *State v. Wallace, supra*, at 72, *State v. Crow, supra*, at 256, *State v. Stevens, supra*, at 24, and *State v. Perkins*, 382 S.W.2d 701, 704 (Mo. 1964); or if they corroborate the testimony of the state's witnesses, *State v. Wallace, supra*, at 72, *State v. Jackson, supra*, at 472, *State v. Stevens, supra*, at 24, *State v. Aubuchon*, 394 S.W.2d 327, 331 (Mo.1965), and *State v. Bozarth*, 361 S.W.2d 819, 825 (Mo.1962). They also have probative value if they aid in establishing any element of the state's case. *State v. Parsons, supra*, at 439; *State v. Damico, supra*, at 359; *State v. Jackson, supra*, at 472; and *State v. Clark, supra*, at 30.

■ Notwithstanding defendant's charge that the complained of pictures were inflammatory and prejudicial, they met several tests of probativeness heretofore set forth. They tended to corroborate the testimony of certain witnesses called by the state, they visually demonstrated the nature and location of the various wounds inflicted upon the victim, they enabled the jury to better understand the facts elicited from several of the state's witnesses, and

**598**

they aided in establishing certain elements of the state's case. A trial court is vested with broad discretion in admitting or rejecting demonstrative evidence of this type because of the superior vantage point it occupies for striking a proper balance between the probative value and prejudicial effect of such evidence. *State v. Parsons, supra,* at 439; *State v. Parker,* 509 S.W.2d 67, 70 (Mo.1974); *State v. Jackson, supra,* at 472; *State v. Crow, supra,* at 255; and *State v. Stevens, supra,* at 24. As the record in the instant case, for a variety of reasons, clearly demonstrates that the pictures were seized of probative value, the trial court did not abuse its discretion in admitting them into evidence.

Judgment affirmed.

All concur.