**STATE of Missouri, Respondent,**

v.

**David Franklin EUELL, Appellant.**

**No. 60583.**

Supreme Court of Missouri,
En Banc.

June 29, 1979.

**174**

Robert Schwarz, Clayton, for appellant.

John Ashcroft, Atty. Gen., Paul R. Otto, Asst. Atty. Gen., Jefferson City, for respondent.

BARDGETT, Judge.

Appellant David Franklin Euell's (hereinafter defendant) conviction of murder in the second degree and thirty-year sentence was affirmed by the Missouri Court of Appeals, Eastern District, after which we sustained defendant's motion to transfer. Art. 5, sec. 10, Mo.Const., Rule 83.03.

Defendant does not challenge the sufficiency of the evidence. Only the facts necessary to resolution of the three points on appeal will be set forth.

Defendant and Eleanor First were married in 1968, had one child, and were separated in 1974, but not divorced. Eleanor lived in an apartment with one Lavina Williams. Eleanor had been dating Arthur Marty Carroll, the deceased, and this relationship caused several arguments and altercations between defendant and Carroll.

On February 15, 1974, the defendant went to Eleanor's apartment. Carroll was there, as was Eleanor, Lavina Williams, and the three-year-old son of the defendant and Eleanor. The testimony differs as to what preceded the shooting; however, defendant fired one shot which missed the deceased and then fired another shot which struck Carroll, killing him.

Prior to trial the state moved for disqualification of the judge of Division Six before whom the case was pending. The motion was sustained and the cause was transferred to Division Eight, Judge Hoester. A trial in Division Eight resulted in a hung jury and mistrial. Prior to the beginning of the instant trial, the defendant moved for disqualification of Judge Hoester, which was sustained, and the cause was then transferred to Division One, Judge Crandall.

One of the principal witnesses against defendant was Eleanor First. Eleanor and the defendant were still married at the time of the homicide but were divorced prior to trial. The question of Eleanor's competency as a witness under sec. 546.260, RSMo 1969, against defendant arose before Judge Crandall prior to trial. The judge indicated he would sustain defendant's objection to the appearance of Eleanor as a witness against defendant. The state then moved or requested Judge Crandall to disqualify, which he did, and the cause was transferred to Division Fourteen, Judge Ruddy, before whom the trial took place. Defendant made no objection to the transfer of the case to Judge Ruddy. Eleanor appeared and testified against defendant over the objection that she was not a competent witness under sec. 546.260.

The conference in Judge Crandall's chambers was not recorded and the foregoing account pertaining thereto is derived from statements by the attorneys and Judge Ruddy during a hearing on post-trial motions.

I.

Defendant's first point is that the state was not entitled to a second change of judge under rule 30.12 and because Judge Crandall disqualified himself at the request of the state defendant should have a new trial.

 There was no objection to Judge Crandall disqualifying himself or to the transfer of the cause to Judge Ruddy. It is correct that a party is entitled to only one change of judge as of right, but any judge may, at the suggestion of a party, or on his own motion, disqualify himself if he believes himself to be in "anywise interested or prejudiced." Rule 30.12. The point is overruled.

II.

 Defendant's second point is the court erred in allowing Eleanor First, who was married to defendant at the time of the homicide, but divorced at trial time, to tes-

tify against him under sec. 546.260, RSMo 1969.[1]

In support of this point the defendant principally relies upon *State v. Kodat,* 158 Mo. 125, 59 S.W. 73 (1900). Mr. Kodat was charged with assault with intent to kill one Josephine Kritsch. Mr. and Mrs. Kodat were married and separated but not divorced at the time Mrs. Kodat witnessed the shooting. They were divorced prior to trial. The state called Mrs. Kodat as a witness and she testified over her former husband's objection. This court put the issue on appeal as: "Is a divorced wife a competent witness against her husband in a criminal prosecution against him for an assault upon a third party, when the alleged assault occurred during their marriage?" That, of course, is the same issue as in the instant case.

The court in *Kodat* reviewed the common-law disabilities and the Missouri modifications thereof as exemplified by Rev.St. 1889, sec. 4218 (now sec. 546.260, RSMo 1969). The court said, "It is perfectly obvious . . . that, Mrs. Kodat would not have been a competent witness against him if she had remained his wife at the time she was offered as a witness against him." With this statement, as will be seen, we agree. The court then went on to hold that she remained an incompetent witness after the divorce the same as if the marriage had never been dissolved and reversed the judgment. As will be seen, we disagree with this holding.

In overruling this point, the court of appeals relied principally upon *State v. Frazier,* 550 S.W.2d 590 (Mo.App.1977), and *State v. Damico,* 513 S.W.2d 350 (Mo.1974). The quotation used from *Frazier* is:

"A spouse is now a competent witness against a defendant spouse in any criminal proceeding if the witness spouse willingly testifies; the option of doing so belongs to the witness spouse; and a witness spouse is permitted, but may not be compelled, to testify in any criminal proceeding against a defendant spouse as to any relevant and admissible matter save confidential communications between spouses."

And the quotation used from *Damico* is:

"While at common law a wife was incompetent to testify against her husband that complete legal disqualification was removed by the enactment of the statute, now sec. 546.260, RSMo 1969, V.A.M.S."

This court agrees that Eleanor was a competent witness against the defendant because they were not married at the time she testified and her testimony did not involve confidential communications. This case was transferred because we have concluded the basis upon which the court of appeals overruled the point is incorrect. That basis is found in the quotation from *Frazier, supra,* which is, in part, incorrect, and unless corrected promptly will contribute to error in the trial of criminal cases. The quotation from *Damico, supra,* seems to be receiving an overbroad interpretation and is likely to lead to error.

At common law a husband or wife was not a competent witness to testify either for or against the other spouse, nor was one spouse allowed to divulge confidential communications arising out of the marriage relationship. The rationale from which these rules evolved was twofold: the rule against the spouse testifying protected the marriage relationship and the confidential com-

1. "546.260. Defendant may testify in own behalf—husband and wife for each other.—No person shall be incompetent to testify as a witness in any criminal cause or prosecution by reason of being the person on trial or examination, or by reason of being the husband or wife of the accused, but any such facts may be shown for the purpose of affecting the credibility of such witness; provided, that no person on trial or examination, nor wife or husband of such person, shall be required to testify, but any such person may, at the option of the defendant, testify in his behalf, or on behalf of a codefendant, and shall be liable to cross-examination, as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case; provided, that in no case shall husband or wife, when testifying under the provisions of this section for a defendant, be permitted to disclose confidential communications had or made between them in the relation of such husband and wife."

munications rule encouraged full disclosure and trust between the parties to the marriage. A defendant spouse could waive the protection of the common law by failing to object at the time the other spouse was called upon to testify. These common-law rules relating to privileged communications between husband and wife have been codified in virtually all states and these statutes are usually merely declaratory of the common-law rule. 81 Am.Jur.2d, secs. 148, 149; 38 ALR2d 570, 573.

Section 546.260, RSMo 1969, removed the common-law disability by permitting one spouse to testify on *behalf* of the other *"at the option of the defendant* spouse" *in a criminal case*; but the statute specifically retains the confidential communications privilege, "provided, that in no case shall husband or wife, when testifying under the provisions of this section for a defendant, be permitted to disclose confidential communications had or made between them in the relation of such husband and wife."

Other statutory provisions have modified the common-law rule which precluded a spouse from testifying for or against each other even in *civil* cases. In Missouri, sec. 491.020, RSMo 1969, removes that disqualification completely in civil cases, retaining only the confidential-communication privilege.

A comparison between sec. 546.260 (criminal) and sec. 491.020 (civil) demonstrates the incompetency to testify is completely removed in *civil* cases so that the spouse may testify for or against the other spouse during marriage, but the criminal statute removes the disqualification only so as to allow the spouse to testify "at the option of the defendant . . *in his behalf"* in a criminal case. Both statutes retain the confidential-communication privilege.

Federal courts recognize the distinction between the capacity of a spouse to testify against the *other, or the incompetency of a* wife to testify against her husband on the one hand, and the privilege of confidential-marital communications on the other. See: Annotation—Marital Communications Privilege, 95 L.Ed. 309. In so doing, while

universally upholding the privilege as to confidential communications during the term of the marriage and beyond, it is recognized that the confidential nature of a communication between husband and wife is destroyed where it is made in the presence of third persons who are capable of understanding it. Anno., *supra.* Even after divorce, the confidential-communication privilege continues because of the policy underlying the rule, which is that confidence is essential to the marriage relationship and, therefore, the fear or concern of future disclosure must be removed. This is done by extending the privilege beyond the termination of the relationship. An act performed by one spouse in the presence of another can also constitute a confidential communication depending upon the circumstances in which the act took place. See: Annotation—Acts As Confidential Communications, 10 ALR2d 1389.

In *Hawkins v. United States;* 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958), the United States Supreme Court held that it was prejudicial error to permit the government, over defendant's objection, to use the defendant's wife as a witness against him, even though she was a "voluntary" or "willing" witness. In its opinion, the court noted that *Funk v. United States,* 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369 (1933) rejected the disqualification excluding testimony by spouses *for* each other, and went on to say, 358 U.S. at 76, 79 S.Ct. at 138:

"The *Funk* case, however, did not criticize the phase of the common-law rule which allowed either spouse to exclude adverse testimony by the other, but left this question open to further scrutiny. 290 U.S. at page 373, 54 S.Ct. at page 212; *Griffin v. United States,* 336 U.S. 704, 714–715, 69 S.Ct. 814, 818–819, 93 L.Ed. 993. More recently, Congress has confirmed the authority asserted by this Court in *Funk* to determine admissibility of evidence under the 'principles of the common law as they may be interpreted * * * in the light of reason and experience.' Fed.Rules Crim.Proc., 26, 18 U.S. C.A. The Government does not here sug-

gest that authority, reason or experience requires us wholly to reject the old rule forbidding one spouse to testify against the other. It does ask that we modify the rule so that while a husband or wife will not be compelled to testify against the other, either will be free to do so voluntarily. Nothing in this Court's cases supports such a distinction between compelled and voluntary testimony, and it was emphatically rejected in *Stein v. Bowman, supra,* a leading American statement of the basic principles on which the rule rests. 13 Pet. [209,] at page 223 [, 10 L.Ed. 129]. Consequently, if we are to modify the rule as the Government urges, we must look to experience and reason, not to authority.

"While the rule forbidding testimony of one spouse *for* the other was supported by reasons which time and changing legal practices had undermined, we are not prepared to say the same about the rule barring testimony of one spouse *against* the other. The basic reason the law has refused to pit wife against husband or husband against wife in a trial where life or liberty is at stake was a belief that such a policy was necessary to foster family peace, not only for the benefit of husband, wife and children, but for the benefit of the public as well. Such a belief has never been unreasonable and is not now. Moreover, it is difficult to see how family harmony is less disturbed by a wife's voluntary testimony against her husband than by her compelled testimony. In truth, it seems probable that much more bitterness would be engendered by voluntary testimony than by that which is compelled. But the Government argues that the fact a husband or wife testifies against the other voluntarily is strong indication that the marriage is already gone. Doubtless this is often true. But not all marital flare-ups in which one spouse wants to hurt the other are permanent. The widespread success achieved by courts throughout the country in conciliating family differences is a real indication that some apparently broken homes can be saved provided no un-

forgivable act is done by either party. Adverse testimony given in criminal proceedings would, we think, be likely to destroy almost any marriage."

While *Hawkins* is not controlling precedent in Missouri, we believe it is sound and comports with most of our cases and the meaning of sec. 546.260.

However, a different question is presented where, as here, there has been a divorce between the time of the occurrence for which the defendant is on trial and the time the spouse is called upon to testify. In such instance, there is no longer any marital relationship or family peace which might be protected by excluding the former spouse from appearing as a witness for the prosecution. Most of the statutes which have been enacted regarding the competency of a spouse to testify appear to refer to the status of the parties, vis-a-vis each other— husband, wife—as of the time of the trial. Hence, where the marriage is dissolved at the time of the trial, and they no longer occupy that status, no reason appears why one should not be allowed to testify against the other. There is no longer any marriage that could be affected. (See, Annotation, 38 ALR2d at 575.)

The holding of *State v. Kodat, supra,* that even after divorce a former spouse may effectively object to the other former spouse testifying as to matters not within the confidential-communication privilege simply because of the former marriage is overruled.

The holding or pronouncement in *State v. Frazier, supra,* that during the marriage a spouse may testify for the prosecution, over the objection of the defendant spouse, if the testifying spouse does so *voluntarily,* is incorrect and should no longer be followed. Nor is it correct to say that a former spouse may, after divorce, refuse to testify solely on the ground that the event happened during the marriage.

In the instant case the marriage had terminated by divorce prior to the trial. The testimony of Eleanor First Euell did not involve confidential communications be-

tween her and the defendant. The trial court was correct in overruling defendant's objection to his former wife testifying. The point is overruled.

### III.

As his third and final point, defendant asserts the trial court "erred in giving paragraph 3 of Instruction 8, as the defense raised therein was not substantiated by the evidence and interjected a false issue . . . ." The record shows the instruction was requested by defendant. The point has no merit. Rule 26.06 and sec. 545.030, subd. 1(16), RSMo 1969.

The judgment is affirmed.

MORGAN, C. J., RENDLEN and SIMEONE, JJ., and FINCH, Senior Judge, concur.

DONNELLY, J., dissents in separate dissenting opinion filed.

SEILER, J., dissents in separate dissenting opinion filed.

WELLIVER, J., not participating because not a member of the court when cause was submitted.

DONNELLY, Judge, dissenting.

In *State v. Kodat,* 158 Mo. 125, 127, 129, 130, 59 S.W. 73, 74, 75 (1900), the Court posed the question: "Is a divorced wife a competent witness against her husband in a criminal prosecution against him for an assault upon a third party, when the alleged assault occurred during their marriage?"

The Court answered its question as follows:

"It is the policy of the law that these things which are privileged during the marriage relation shall remain forever inviolable, whether the relation has ceased by reason of death or divorce; and the divorced wife, from reasons of public policy, is incompetent to testify against her husband to the same extent that she would have been had the marriage relation never been dissolved. And such, we think is the overwhelming weight of authority."

In my view the holding in *Kodat* was sound in 1900 and is sound today. I would not overrule it.

I respectfully dissent.

SEILER, Judge, dissenting.

I respectfully dissent. The record shows that the state first moved for disqualification of Judge Ferriss in Division 6. This motion was sustained. This was change of judge number one for the state. Then, when the case was pending before Judge Crandall in Division 1, and after learning that Judge Crandall would rule against the state on a question of evidence, the state again filed a motion to disqualify the judge. This motion was also sustained. This was change of judge number two for the state. I find this set forth in the record by Judge Ruddy, who during the hearing on the motion for new trial, said: "The State of Missouri by the Prosecuting Attorney filed a motion to disqualify the Judge of Division Number One who was Judge Crandall and although his signature is not dated that motion was SUSTAINED by Judge Crandall and that cause was sent to Division Number Fourteen [Judge Ruddy's division] and the trial commenced, of course, on March the 1st, 1976 . . . ." Both sides agreed this was the correct history. The respondent's statement of facts is to the same effect.

Rule 30.12 states "Only one such affidavit [referring to an affidavit of disqualification of judge] may be filed by the same party in the same case and such affidavit shall be made as to only one of the judges of said court."

Apparently the proceedings before Judge Crandall were in chambers with no reporter present and no record made. The state asserts defendant's counsel made no objection at the time. I find this difficult to accept in the absence of a record to that effect, because what was happening to the defendant was that he was, by virtue of the state making an unauthorized affidavit for a second change of judge, about to be deprived of a judge who had indicated he was

going to rule on an important evidence question in defendant's favor, a ruling which probably would have meant the state would fail to convict defendant.

All the record shows on what occurred before Judge Crandall as to objection by defendant is the prosecutor's statement at the hearing on the motion for new trial that "[I]t is my recollection, discussion arose and I stand corrected if I'm wrong, but Mr. Schwartz did not make an objection to Crandall's disqualification at that time." This is a rather equivocal statement.

Unfortunately, at that point in the hearing on the motion for new trial the court said, "Let's go off the record" and when the court returns to the record, the next statement made is merely that the motion for new trial has been presented and argued. I do not believe it can be said on this record that Judge Crandall's disqualification was made on his own initiative. On the contrary, it is quite clear that the state, contrary to rule 30.12, sought and obtained two disqualifications of judge in the same case. It is by no means clear, however, whether or not· defendant stood by in silence and acquiesced, as the state now contends. As said, it is hard to believe defendant would acquiesce in the state's obtaining an unwarranted second change of judge where the second judge was going to rule an important evidence question in defendant's favor. I would remand this case for an evidentiary hearing on the point with findings of fact to be made by the trial court and the cause then returned to this court before we decide the issues and permit the state baldly and unblushingly to violate rule 30.12.