**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Charles Dale SHAFER,
Defendant–Appellant.**

**No. 61816.**

Supreme Court of Missouri,
En Banc.

Dec. 15, 1980.

---

C. R. Rhoades, Robert W. Evenson, Pineville, for defendant–appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for plaintiff–respondent.

RENDLEN, Judge.

Charged with capital murder, defendant was convicted of murder in the second degree and sentenced to life imprisonment.

Following affirmance in the Court of Appeals, Southern District, the cause was transferred that we might examine whether the decision in *State v. Euell*, 583 S.W.2d 173 (Mo. banc 1979) should be given retrospective application to this case, tried and concluded prior to the date of *Euell*. Affirming, we utilize portions of the Court of Appeals' opinion without quotation marks.

The essential facts are these: On May 14, 1977, defendant drove from Chicago to the home of his mother–in–law, Iola Thompson, in Jasper County to visit his son and estranged wife, Rita. Rita, who was dating Jerry Sidenstrecker, had gone with him and several others to a fishing camp on a nearby creek where defendant joined them. That evening, in a three–way conversation among Dean Simpson, Rita and defendant, Simpson referred to Rita as Jerry's wife. According to Rita's testimony, defendant in apparent anger replied, "She's not his God damn wife, she's my God damn wife until the day she divorces me, she's my wife." Rita further testified that "Dean apologized and Dale turned to me and said, 'Someone is going to get killed,' and I said, 'Dale, why,' I said, 'Are you going to kill me?' And he said 'No,' I said, 'After all we have been through and hashed that out, are you going to kill me?' and he said, 'No, not you, but someone is going to die.' " During the evening no intimacies were exchanged between Rita and Jerry but that night she and Jerry slept on the same cot with one of the children. Defendant slept in his car.

Leaving camp the next day, defendant appeared at Iola Thompson's house late in the afternoon looking for a gun. Told there was none in the house, he searched a nearby building for a weapon, then returned to the house and when told again by Mrs. Thompson there was no gun, he stated, "That's all right, I can get a gun." As defendant left, he added, "I'm going to kill someone." Mrs. Thompson sent her granddaughter, Michele Felkner, to the camp to tell Rita and Jerry of this development. Hearing of these things Jerry, Rita and Michele left camp in the van, driving along a narrow road to Mrs. Thompson's house. En route they were stopped by an automobile driven by defendant, who was pointing a gun at them and fired a round through his own windshield toward the van. Jerry Sidenstricker got out and told defendant that Michele was in the van. He pleaded with defendant to spare Michele and Rita. Defendant got out of his car and confronted Sidenstricker between the vehicles. After a brief verbal exchange, defendant shot and mortally wounded Sidenstricker, then ordered Rita to get out of the car but not to go for help. At first he threatened her but then without explanation unloaded the gun handing it to her.

Defendant appeared again at Iola Thompson's at about 7:00 p. m. and told her he had killed Jerry Sidenstricker, then waited for the sheriff. Shortly the officers arrived and he told them he had shot Jerry and wanted to go to jail. An autopsy confirmed the cause of Sidenstricker's death as the bullet wound.

For his defense, defendant maintained he did not have the required intent at the time of the killing to commit murder in the second degree. Additionally he sought to prohibit his wife from testifying by objecting to her endorsement as a witness on October 3, 1977, claiming his "privilege un-

der the law." The court overruled that objection and permitted her name to remain endorsed as a State's witness and defendant's motion in limine filed October 12 seeking to prohibit her from testifying, was also denied. Immediately before the trial, on October 17, 1977, a hearing was conducted on defendant's motion to prohibit Rita Shafer from testifying as a State's witness. The trial judge overruled the motion relying on *State v. Frazier*, 550 S.W.2d 590 (Mo.App.1977).

On appeal defendant first contends the conversation with his wife was subject to exclusion as a confidential communication. The facts belie this claim of error. The conversation was not confidential; instead, a third person, Dean Simpson, was present at the time of the discussion. Hence, in the absence of confidentiality the assertion fails. *Allen v. Allen*, 60 S.W.2d 709, 711 (Mo.App.1933).

Next defendant contends the trial court's admission of his wife's testimony quoting defendant's threat that "someone is going to get killed" was violative of his privilege to have her disqualified as a witness under § 546.260, RSMo 1969, resulting in manifest injustice or miscarriage of justice which requires reversal. Stated otherwise, defendant, who did not object to her testimony at the time of trial, claims it was plain error to permit Rita Shafer to testify for any purpose in the criminal proceeding against him. At common law a husband or wife could not testify for or against the other in any legal proceeding where the spouse was a party except in the prosecution of one for criminal injury to the other, as for assault and battery. *State v. Dunbar*, 360 Mo. 788, 230 S.W.2d 845, 846 (1950). This disqualification stemmed from (a) the policy of promoting and preserving domestic harmony;[1] (b) antipathy toward con-

---

1. The United States Supreme Court in *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), considering the continued vitality of the privilege against adverse spousal testimony in federal courts, noted at 50, 100 S.Ct. at 912:

Testimonial exclusionary rules and privileges contravene the fundamental principle that 'the public ... has a right to every man's evidence.' *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950). As such, they must be strictly construed and accepted 'only to the very limited

victing a person by the testimony of one "sharing the secrets of his domestic life" and (c) a perceived temptation to commit perjury. *State v. Kollenborn*, 304 S.W.2d 855, 859–860 (Mo. banc 1957).

Section 546.260, RSMo 1969,[2] whose roots reached into a hundred years of our history, (§ 1918, RSMo 1879), qualifiedly removed the common law disability of a spouse to testify for or against the other in a criminal cause. This statute had been interpreted by a line of cases prior to the trial court's action of which appellant complains. Among these is *State v. Dunbar*, 230 S.W.2d 845, 360 Mo. 788, decided by this Court in 1950. There it was held the injured spouse could not be *compelled* to testify against her husband in an assault proceeding stemming from his violence done to her. The Court construing § 4081, RSMo 1939 (identical to § 546.260, RSMo 1969), interpreted the statute as meaning a spouse "may, at *his or her own option*, testify as a witness for the State." (Emphasis added.) *Id.* at 847. This interpretation cloaked the witness–spouse with the privilege of testifying voluntarily in a criminal proceeding against the other spouse regardless of whether the witness was the victim. Later, this Court in *State v. Kollenborn*, 304 S.W.2d 855, 862 (Mo. banc 1957), a criminal proceeding for

mistreatment by a defendant of his child in which his spouse testified, again construed the statute (§ 546.260, RSMo 1949, same as 1969), and, permitting defendant's spouse to testify, added this to the construction previously announced in *Dunbar*: "The modern tendency is to relax the old rules of incompetency of witnesses, [and] generally ... to the extent indicated in this opinion, the broad statements in certain cases to the effect that in no event may a wife testify against her husband in a criminal case, or testify without his consent, should no longer be followed." *Id.* at 864. More recently in *State v. Damico*, 513 S.W.2d 351, 361 (Mo.1974), this Court considered the question in a case involving testimony of a witness, divorced from the defendant at time of trial and made these pronouncements construing the language of the statute at bar. "While at common law a wife was incompetent to testify against her husband that complete legal disqualification was removed by the enactment of the statute, now § 546.260, RSMo 1969 ..." *Id.* at 361. These cases provided a broad base for the decision of the Kansas City Court of Appeals in *State v. Frazier*, 550 S.W.2d 590 (Mo.App.1977), which, cited to the circuit judge during trial, supplied the foundation

extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.' *Elkins v. United States*, 364 U.S. 206, 234, 80 S.Ct. 1437, 1454, 4 L.Ed.2d 1669 (1960) (Frankfurter, J., dissenting).

In ruling that the witness spouse alone has a privilege to refuse to testify adversely, the court at 52, 100 S.Ct. at 913 stated,

The contemporary justification for affording an accused such a privilege is also unpersuasive. When one spouse is willing to testify against the other in a criminal proceeding– whatever the motivation–their relationship is almost certainly in disrepair; there is probably little in the way of marital harmony for the privilege to preserve. In these circumstances, a rule of evidence that permits an accused to prevent adverse spousal testimony seems far more likely to frustrate justice than to foster family peace. Indeed, there is reason to believe that vesting the privilege in the accused could actually undermine the marital relationship.

2. Section 546.260, RSMo 1969, is as follows:

No person shall be incompetent to testify as a witness in any criminal cause or prosecution by reason of being the person on trial or examination, or by reason of being the husband or wife of the accused, but any such facts may be shown for the purpose of affecting the credibility of such witness; provided, that no person on trial or examination, nor wife or husband of such person, shall be required to testify, but any such person may, at the option of the defendant, testify in his behalf, or on behalf of a codefendant, and shall be liable to cross-examination, as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case; provided, that in no case shall husband or wife, when testifying under the provisions of this section for a defendant, be permitted to disclose confidential communications had or made between them in the relation of such husband and wife.

for his determination in the case sub judice. In *Frazier* the testimony of the defendant's former spouse was permitted over objection that she was incompetent as a witness under the statute. Following a lengthy review of the Missouri cases construing the questioned section, the Court of Appeals understandably concluded that the statute had been construed to provide the following rule. "A spouse is now a competent witness against a defendant spouse in any criminal proceeding if the witness spouse willingly testifies; the option of doing so belongs to the witness spouse ..." *Id.* at 596. Hence, given the history of Missouri cases construing § 546.260 and its predecessors as granting the witness an option of asserting the privilege, it is clear we may not fault the trial court for following the then law as announced by this Court and the Court of Appeals.

In June, 1979, some 20 months after Shafer's trial was concluded, this Court overruled *State v. Frazier,* stating its holding "is incorrect and should *no longer* be followed." (Emphasis added.) *State v. Euell,* 583 S.W.2d 173, 177 (Mo. banc 1979). However, we cannot impose upon the trial judge the omniscience of foretelling this Court's reversal of a line of authority on an evidentiary rule nearly two years after his reliance on the decisional law then in vogue. Instead, *Euell* is prospective in effect except as to the defendant there. The reasons for prospective application of *Euell* are quite simple. First, it is clear from the quoted language, *Euell* was not intended to have retrospective application, for as noted, the Court announced that *Frazier* "should *no longer* be followed," (emphasis supplied) and this could only refer to cases tried after June 29, 1979. Second, in *Euell* the matter was one of statutory interpretation involving only a rule of evidence concerning placement of the privilege as to testimony of a witness–spouse. Rules proscribing testimony because of privilege are not considered substantive but rather procedural

rules of evidence pertaining to exclusion of particular testimony. *State v. Hodges,* 586 S.W.2d 420, 425 (Mo.App.1979). Such procedural changes are given prospective effect only, *Barker v. St. Louis County,* 340 Mo. 986, 104 S.W.2d 371, 377–78 (1937); *Dietz v. Humphreys,* 507 S.W.2d 389, 392 (Mo.1974), and in appropriate cases substantive changes too may be made prospective. *Bodard v. Culver–Stockton College,* 471 S.W.2d 253, 254 (Mo.1971). It has been consistently held that evidentiary rules such as that under consideration are part of the legal machinery employed in the trial of a case and regarded as procedural, *Shepherd v. Consumers Cooperative Association,* 384 S.W.2d 635, 640 (Mo. banc 1964), and changes in such procedure apply prospectively only. See, *Hayes v. United States,* 236 F.Supp. 225, 227 (E.D.Mo.1964), *aff'd,* 347 F.2d 668 (8th Cir. 1965), where it was stated that "... decisions concerning the admissibility of evidence should not be given a retroactive effect to disturb convictions which were proper at the time they were decided." It is well to reemphasize that our decision in *Euell* involved no more than a change in judicial construction of § 546.260, RSMo 1969, and it has been held such change in statutory interpretation operates prospectively so as not to impair "the rights, positions, and course of action of parties who have acted in conformity with and in reliance upon" the former construction. *Eberle v. Koplar,* 85 S.W.2d 919, 923 (Mo.App.1935).[3] Thus, because *State v. Euell, supra,* is prospective in effect, we decline to charge the trial court with error, a fortiori, not plain error, in applying *State v. Frazier,* the appellate decision binding on circuit courts at the time of this judge's action.

Defendant's additional points of error require little discussion. As the crime for which defendant was charged occurred prior to January 1, 1979, defendant was not entitled, under the existing law, to a diminished capacity instruction. See MAI–CR 2d

---

**3.** The United States Supreme Court has ruled that a state Supreme Court is not constitutionally compelled to make retroactive its new construction of a statute. *Wainwright v. Stone,* 414 U.S. 21, 23–24, 94 S.Ct. 190, 192–193, 38 L.Ed.2d 179 (1973).

3.74. The evidence at trial, the instructions on lesser included offenses, the converse instructions, and the argument of defense counsel on the issue of lack of intent were adequate under the applicable law. *State v. Cole*, 588 S.W.2d 94, 99 (Mo.App.1979). See *State v. Anderson*, 515 S.W.2d 534 (Mo. banc 1974).

Finally defendant contends the trial court erred in refusing to exclude Rita Shafer as a witness, or in the alternative, to grant defendant a continuance, when the State informed the court and defendant that Rita Shafer would testify voluntarily for the State, after failing previously to disclose her willingness to testify, contrary to Rule 25.32 (now Rule 25.03). Because defendant knew two weeks before trial that Rita Shafer had been endorsed as a State's witness, and failed to depose her as authorized by Rule 25.41 (now Rule 25.12), we conclude the trial judge did not abuse his discretion overruling the motion. *State v. Davis*, 556 S.W.2d 45, 47 (Mo. banc 1977). The judgment is affirmed.

DONNELLY, WELLIVER, MORGAN and HIGGINS, JJ., concur.

BARDGETT, C. J., concurs in part and dissents in part in separate opinion filed.

SEILER, J., concurs in separate opinion of BARDGETT, C. J.

BARDGETT, Chief Justice, concurring in part and dissenting in part.

I concur in the principal opinion, but with regard to that part of the principal opinion which deals with the competency of Rita Shafer to testify against the defendant I concur only in the result. Since 546.260 was enacted in its original form in 1879 (§ 1918 RSMo 1879) this Court has consistently held that the statute prohibits a spouse from testifying against a defendant spouse in a criminal case during the existence of the marriage except where the testifying spouse is the victim or parent of the victim. *See, e. g. State v. Euell*, 583 S.W.2d 173 (Mo. banc 1979); *State v. Kodat*, 158 Mo. 125, 59 S.W. 73 (1900) (overruled in part); *State v. Willis*, 119 Mo. 485, 24 S.W. 1008 (1894). No decision by this Court has approved such spouse against spouse testimony in a criminal case where the defendant spouse objects to the testimony unless such an exception was present. The right of the defendant to prevent such testimony is afforded by statute. (§ 546.260 RSMo 1978).

The principal opinion in fact agrees that § 546.260 prohibits one spouse from testifying against a defendant spouse in a criminal case over the defendant spouse's objection. However, the majority holds that this interpretation of 546.260 is prospective from the time of *Euell* only. I disagree with that interpretation of 546.260. Ever since the enactment of the statute in 1879 a spouse has been prohibited from testifying against a defendant spouse where the defendant objects. This was the holding of *State v. Willis* in 1894 and was, in part, the holding of *State v. Kodat*, 158 Mo. 125, 59 S.W. 73 (1900), and has never been overruled in this respect. In *State v. Euell, supra, Kodat* was overruled in part but only to the extent that *Kodat* held a *former* spouse of a defendant was prohibited by the statute from testifying against the *former* spouse over objection. Other cases cited in the principal opinion concern exceptions to the statute, but no case cited therein deals with a spouse testifying against the defendant spouse during the course of a presently existent marriage in the context of a criminal case where the defendant objected to such testimony, except in the instance where the case involves a crime against the testifying spouse or a child of that spouse. Even *State v. Frazier*, 550 S.W.2d 590 (Mo. App.1977), which was the case relied upon by the trial court, did not involve a spouse testifying against a spouse. In *Frazier* the parties were no longer married.

The principal opinion appears concerned about "charging" the trial court with error with regard to the trial court's reliance on dicta in *State v. Frazier*, 550 S.W.2d 590 (Mo.App.1977), in overruling defendant's objection to his spouse's testimony. The principal opinion seems to say that if a trial judge acts in good faith and relies upon

some appellate case authority that the trial court's ruling will stand even though erroneous and prejudicial to a party to the case.

If we begin to excuse and affirm the erroneous admission of evidence on the basis that the trial judge relied in good faith on dicta, then the rights of the parties conferred by statute become meaningless. All appellate opinions proceed on the premise that rulings by trial courts were made in good faith and upon a belief that the rulings were correct. Sometimes the rulings are incorrect and require reversal. Were it not for the fact that the wife's testimony was admissible under the exception noted infra, I would dissent as I cannot agree that "prospective" and "retrospective" considerations play any part in a case where the right has been conferred by a statute that was effective when passed; nor can I agree that if an erroneous ruling prejudices a party that ruling can be excused and affirmed because the trial judge acted in good faith.

Section 546.260 was enacted in 1879 to relieve certain fixed, common–law disabilities, it was not enacted to create new disabilities nor to eliminate the common law exceptions which previously existed. *State v. Kollenborn*, 304 S.W.2d 855 (Mo. banc 1957). In *Kollenborn*, this Court noted the continued existence of the common–law exceptions permitting the wife to testify against her husband in the case of her own injury by the husband. It is in light of this common–law exception that I concur in the principal opinion.

Rita Shafer was the object of her husband's violence. Prior to shooting the deceased, the defendant fired his shotgun twice into the front of the van occupied by Rita, the deceased, and the child Michele. Rita and the deceased were in the front seat at the time these shots were fired and Michele was in the rear seat of the van. Undeniably Rita Shafer was put in fear of her own and her child's physical safety by Dale Shafer's actions. Defendant again threatened her immediately following the shooting of Jerry Sidenstricker. Rita Shafer is therefore competent to prove the violence directed in part against her under the exception noted in *Kollenborn*.

Prior Missouri cases in which this common–law exception has been applied have involved circumstances in which the wife or child is the victim of the crime with which the defendant is charged. *See, e. g. State v. Kollenborn*, 304 S.W.2d 855 (Mo. banc 1957) (defendant charged with mistreating his infant son. Wife found competent to testify specifically on basis victim was her child.) *State v. Koelzer*, 348 Mo. 468, 154 S.W.2d 84 (1941) (defendant charged with assaulting his spouse); *State v. Anderson*, 252 Mo. 83, 158 S.W. 817 (1913) (defendant charged with assault with intent to kill his wife); *State v. Pennington*, 124 Mo. 388, 27 S.W. 1106 (1894) (spouse competent to testify against spouse defendant charged with assault with intent to kill spouse). *Cf. State v. Vaughan*, 136 Mo.App. 645, 118 S.W. 1186 (1909) (defendant charged with disturbing the peace of his spouse). In the present case defendant was not charged with a crime in which his spouse or her child were the victims but Rita Shafer and Michele Felker were nonetheless objects of Dale Shafer's act of violence and these acts were part of the same event which gave rise to the shooting of Sidenstricker. Under the common–law exception as articulated in *State v. Kollenborn, supra*, at 860, a spouse is competent to testify against spouse where the latter "committed or attempted an assault or other act of violence upon the proffered witness". Therefore in the present case Rita Shafer is a competent witness by reason of the violent action of Dale Shafer in firing upon her and the other occupants of the van, despite the fact that Rita was not the victim of the crime charged.